Max GREENBERG, Defendant, Appellant,

v.

UNITED STATES OF AMERICA, Appellee.

No. 5636.

United States Court of Appeals First Circuit.

July 12, 1960.

James R. McGowan, Providence, R. I., with whom Lester H. Salter and Salter & McGowan, Providence, R. I., were on brief, for appellant.

Joseph Mainelli, U. S. Atty., Providence, R. I., with whom Arnold Williamson, Jr., and Samuel S. Tanzi, Asst. U. S. Attys., Providence, R. I., were on brief, for appellee.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

ALDRICH, Circuit Judge.

The defendant was found guilty by a jury of filing false and fraudulent income tax returns on behalf of the Star Pharmacy, Inc., of which he was president and sole stockholder, for the years 1952 to 1954 (3 counts), and guilty of wilfully attempting to evade and defeat the payment of his individual tax for the years 1952 and 1953 (2 counts). Following jail sentences on each count to be served concurrently, and the imposition of separate fines, he appealed. There must be a new trial. Without considering whether there were other errors, we shall deal only with those which seem most likely to reoccur.[1] These consist of prejudicial conduct by the United States attorney,

---

1. On this basis we do not pass upon certain testimony which the government informs us should not be considered in the light of the fact that it *"crept* into the record *inadvertently,"* although the basis for asserting inadvertence does not appear, and the government did not seek to withdraw the evidence after it allegedly "crept" in. (Ital. in original.) We accept this statement, however, as meaning that it will not be reoffered.

and proof of the government's case through hearsay evidence.

■ The defendant did not file a personal return for the year 1952 or 1953. Over his repeated objections the court permitted the government to show that he had paid a personal income tax in 1943 of $17.81, had filed a return showing no tax due in 1946, and had filed no personal return in any other pre-indictment year.[2] In his closing argument to the jury, the United States attorney stated: "Now going back to this year of 1943, as my brother has admonished you —and I join in his admonition—when you go into the jury room don't leave your common sense behind, don't leave your common knowledge behind. Take it with you. In 1943, as you know, we were engaged in one of the most crucial periods of our history, the greatest war in the history of the world. We became embroiled in it, and the whole future of this country was at stake. And the ultimate result of that war would have determined whether our way of life was to continue or whether it was to perish from this earth. And in pursuance and in prosecuting that war there were hundreds of thousands of lives of the flower of American youth lost on the battlefields or on the oceans or in the airways of this world. And the taxpayers in this country, for prosecuting that war, paid and committed themselves to pay hundreds of billions of dollars. And Mr. Greenberg, along with his family, and all of us, are the beneficiaries of the sacrifices that were made during the war years. And Mr. Greenberg shows his gratitude by paying the magnanimous and munificent amount of money of $17.81 by way of income taxes, as his contribution." At this point defendant objected, and the court replied, "I suppose

counsel must indulge in a certain amount of oratory."

■ We do not know what the court had in mind. Oratory on the issues in the case is one thing. The defendant was indicted for the years 1952 and 1953. Even if there were a showing that he had deliberately falsified his return on one occasion ten years earlier, we would doubt its relevancy. But here there was not even this, as there was no evidence that $17.81, paltry as it may have seemed, was a penny less than the amount owed. The government's tawdry charge of unpatriotism was not only unwarranted, it was inexcusable. It called for immediate correction and rebuke even if counsel had not risen to object.

■ The United States attorney commenced his final argument by informing the jury that he was "a sort of thirteenth juror [who] applies his training in the evaluation of evidence, in analyzing evidence, and tries to convey to the jury just what part the evidence plays in the presentation of a case" (a description we find quite inappropriate, since counsel, unlike a juror, is not required to be impartial). Near the end of his argument the United States attorney sought to put this self-appointment to use. In vigorous language he expressed his personal opinion of the trustworthiness of the government's evidence and the consequent guilt of the accused. Upon objection interposed, the court ruled in the presence of the jury that the prosecutor had a right to argue "his belief in the evidence." Counsel continued, and the court overruled a second objection, but expressed a caution. The argument was then repeated.

Rule 15 of the Canons of Professional Ethics of the American Bar Association reads,

---

2. All of this evidence was improperly admitted. In Spies v. United States, 1943, 317 U.S. 492, 63 S.Ct. 364, 87 L.Ed. 418, it was held that the wilful failure to file a return and the wilful failure to pay the tax known to be due were not sufficient to constitute the felony of attempting to evade and defeat the tax. The district court seemed to feel, however, that it was admissible evidence to show a fraudulent intent. Whether or not that might be so in some circumstances, it was of little relevance here without evidence that as to any specific pre-indictment year the defendant even owed a tax. However, the evidence itself was less prejudicial than the use the government made of it.

"It is improper for a lawyer to assert in argument his personal belief in his client's innocence or in the justice of his cause."

Government counsel stated in oral argument before us that this was "inapposite" because he is an "advocate." We are not clear whether he disapproves of the principle, or whether he considers himself outside of it. In either event we disagree. To permit counsel to express his personal belief in the testimony (even if not phrased so as to suggest knowledge of additional evidence not known to the jury), would afford him a privilege not even accorded to witnesses under oath and subject to cross-examination. Worse, it creates the false issue of the reliability and credibility of counsel. This is peculiarly unfortunate if one of them has the advantage of official backing.[3] The resolution of questions of credibility of testimony is for impartial jurors and judges. The fact that government counsel is, as he says, an advocate is the very reason why he should not impinge upon this quasi-judicial function. We believe the canon to be elemental and fundamental. See also 1 Bishop, New Criminal Procedure § 293 (2d ed. 1913);

6 Wigmore, Evidence § 1806 (3d ed. 1940).

It is true that special circumstances, such as a personal attack upon counsel, may occasionally justify a reply. See, e. g., United States v. Socony-Vacuum Oil Co., Inc., 1940, 310 U.S. 150, 240–242, 60 S.Ct. 811, 84 L.Ed. 1129; Gridley v. United States, 6 Cir., 1930, 44 F.2d 716, 739; United States v. Battiato, 7 Cir., 1953, 204 F.2d 717, 719. Too much has sometimes been read into these cases due in part, perhaps, to language in some of the opinions.[4] To the extent that cases may be found that permit counsel to state their personal belief as a matter of course, we do not follow them. We agree with the statement that "No one who is at all conversant with jury trials can fail to see the possible prejudice * * *." State v. Gunderson, 1913, 26 N.D. 294, 297, 144 N.W. 659, 660.

■ Before turning to the evidence, there is one further incident that merits attention. During the trial, while testimony was being introduced following a recess, the court remarked that the defendant was not in the room. The United States attorney replied by inquiring whether it could be "stipulated that the

3. Where would this leave a criminal defendant who is entitled to representation, but whose counsel does not believe in his innocence? Must his counsel nevertheless assert such a belief in order to counter the expressed opinion of government counsel, or does such a defendant have an unrefuted witness against him, in the form of the prosecuting attorney? Or should a prosecutor be permitted to argue, for example, "Members of the jury, I tell you that in my opinion trained to examine evidence this defendant is guilty as hell. I know it; he knows it. Even his own counsel knows it. Oh yes, his counsel asked you to find him not guilty. But I notice that not once did he suggest to you that he had even a shadow of belief in his client's innocence. Why didn't he? Because his conscience wouldn't permit him to. Even his own lawyer doesn't think he is innocent, but he wants you * * *" etc., etc. That is not the argument made in this case, but we see no stopping point except the one stated in the canon.

4. In Battiato the court stated, "*He does not state in uncompromising language or even hint the defendants are guilty. He states merely that he is arguing that they are guilty and that he believes them guilty.*" 204 F.2d at page 719. (Ital. suppl.) Surely the court must have misspoken itself in suggesting that counsel's personal belief in guilt is something less than a hint. We think the court meant that government counsel had not hinted that there was any evidence which he had in mind that was unavailable to the jury (a hint that all agree would have been the clearest kind of error), and that its actual holding was that his assertion of personal belief in the defendants' guilt was justified by certain prior argument made by defendants' counsel. Whether we would have found that argument adequate special circumstances we need not decide. It is clear that there were none in the case at bar.

defendant had waived his presence in the courtroom?" The court acceded. It may be assumed that defendant's counsel also acceded. It does not appear, however, that the defendant had authorized such a stipulation, or that he even knew that the trial had resumed. Nor does it appear when he eventually returned. A trial may continue in the defendant's absence only if such absence was "voluntary." Fed.R.Crim.P. 43, 18 U.S.C. The government has made no such showing. Cf. Echert v. United States, 8 Cir., 1951, 188 F.2d 336, 26 A.L.R.2d 752. But cf. Parker v. United States, 4 Cir., 1950, 184 F.2d 488.

■ In describing the government's case in his opening government counsel informed the jury that the defendant drew "checks on the corporation which he used for his own personal purposes." What this meant was that the payment of defendant's personal bills by the corporation was income to him. Whose bills it was that were paid, that is to say the purpose of the checks, was an important element on the corporate counts, and was essentially the whole of the government's case on the personal counts. The government proceeded to prove this purpose through conclusory statements of one Gray, a special agent of the Internal Revenue Service, who stated the totals of the checks that represented income and non-income in his opinion, and which were personal and which for corporate purposes. The hearsay nature of this opinion testimony was abundantly revealed. Gray's analysis and compilations were, by his admission, made from " * * * monthly statements provided by the bank, and from independent corroboration from witnesses." "This determination was based on inquiries made of the payees of the checks, the taxpayer, Mr. Greenberg, or his representative * * *." Or, according to the government's brief, "the purpose for which each of the checks was used was determined by him through his investigation." Spelling this out, Gray testified that, for example, on finding that there were corporate checks payable to the telephone company and the light company, he went to these companies and determined that the checks were to meet bills incurred by the defendant at his residence, and were not charges at his place of business. No payee or other third parties testified at the trial.[5] No records or admissions of the deefndant corroborated this testimony.[6]

To justify the admission of this evidence the government in its brief charges that the defendant "fails to discern the distinction between testimonial and circumstantial evidence. * * * The statements of the persons interviewed by witness Gray were not offered for the truthfulness of their assertions as to the nature of the transactions for which these checks were issued * * * [but] solely for the purpose of showing as a fact the reaction of witness Gray in *his* determination of the purposes for which the

5. The debatability of the witness' conclusions on this matter is graphically illustrated by the fact that the government came in with two sets of figures for the defendant's personal income deficiency—one civil, and a smaller one for fraud because it was not sufficiently sure of the balance. But apparently the government, through Mr. Gray, was to be the arbiter of the extent that it was appropriate to be certain.

6. In many instances the checks themselves did suggest that the payments were for the defendant's individual benefit (in which case the checks were independently admissible), but in many others they did not. For example, the corporation's checks to the telephone company and light company, discussed above, do not show on their face whether they are paying for services rendered the corporation, or someone else. The meat-market checks were similarly ambiguous—having in mind that the corporation made and sold sandwiches. However, the United States attorney, pursuant, perhaps, to his announced ability to analyze evidence, told the jury that "in no instance is a check payable that could conceivably be considered to be a payment on behalf of the corporation." Had this been true, there would have been no need of Mr. Gray's testimony, a suggestion which the government has never made.

checks issued. Only the credibility of witness Gray, who took the statements, was involved." (Ital. in orig.) Encouraged by this flight from reality the government moves into orbit, if we may use the vernacular. "The issue before the Court was *not* whether these checks represented payments for personal investments, fuel, furs, camping privileges, groceries, clothing, life and health insurance, medical expenses, house repairs and renovations, services and other miscellany." (Ital. suppl.) Then, after three irrelevant paragraphs, the trajectory suddenly returns to earth. "The only genuine issue with reference to these 336 checks was whether they were drawn for corporate or personal purposes." The government, however, seems not to realize where it has landed.

Even without this inadvertent concession the government's position hardly merits discussion. Obviously the jury was not trying Gray's state of mind.[7] Both in his opening and in his final argument to the jury, the United States attorney discussed the actual purpose of the checks, and nothing else. Of course nothing else was material. It is elementary that this purpose could not be established by what third parties told the witness out of court, or by testimony of what he concluded therefrom.

At the conclusion of the evidence the defendant moved for acquittal. This motion was denied. Although the defendant moved for a new trial, he did not move after verdict for judgment n. o. v. pursuant to Fed.R.Crim.P. 29, 18 U.S.C. Passing the point of whether such motion is necessary in a criminal, as distinguished from a civil case, Cone v. West Virginia Pulp & Paper Co., 1947, 330 U. S. 212, 67 S.Ct. 752, 91 L.Ed. 849, we would not be obliged to order an acquittal now even were we satisfied that no properly admissible evidence warranted conviction. Bryan v. United States, 1950, 338 U.S. 552, 70 S.Ct. 317, 94 L.Ed. 335. On a review of the entire record we believe that the more appropriate order is to require a new trial.

Judgment will enter vacating the judgment of the District Court, setting aside the verdict and remanding the case for a new trial.

---

7. The government states that Gray's duties were to investigate among third parties and to report, and by some unfathomable process it seeks to turn this into an argument that the question before the jury was simply "Gray's credibility." "[T]he availability of witness Gray for cross-examination by the appellant satisfied his constitutional rights of confrontation * * *." In marked contrast to this was the government's position at the trial when it successfully resisted the defendant's attempts to secure, for cross-examination of Gray, those portions of his reports which disclosed what third parties had told him. It is difficult, to say the least, to reconcile these two positions.