Francis B. REICHERT, Jr., Appellant,

v.

UNITED STATES of America, Appellee.

No. 19526.

United States Court of Appeals District of Columbia Circuit.

Argued March 11, 1966.

Decided April 5, 1966.

Mr. George R. Jones, Washington, D. C. (appointed by this court), with whom Mr. William R. Trenor, Washington, D. C., was on the brief, for appellant.

Mr. Robert S. Brady, Atty., Dept. of Justice, with whom Messrs. David G. Bress, U. S. Atty., Frank Q. Nebeker and William H. Collins, Jr., Asst. U. S. Attys., were on the brief, for appellee.

Before FAHY, DANAHER and WRIGHT, Circuit Judges.

DANAHER, Circuit Judge:

Convicted after a jury trial on a one count indictment charging robbery, this appellant has here contended (1) that he had been denied a speedy trial; (2) the District Court had erroneously received in evidence the appellant's photograph which had been identified by a victim at police headquarters; (3) that the trial judge had erred in denying the appellant's motion for acquittal; and (4) the prose-cutor in his closing argument had improperly made reference to Jencks Act statements. We find no error except with reference to the fourth point which will presently be discussed.

The record discloses that about 9 P.M. on March 13, 1964, two Safeway store employees, McNeill and Thorne, were transporting two deposit bags containing some $2,000 in cash to the National Capital Bank in the District of Columbia. As they approached the depository, two men emerged from an alley. Pointing a gun at McNeill one said "Give me the money or I will blow your heart out." McNeill and Thorne yielded the bags to the robbers who promptly fled. Thorne then reported the robbery to the police while McNeill entered his car and drove about the area in an effort to locate either the robbers or their possible "getaway car." At police headquarters Thorne selected a photograph which he identified as that of this appellant with whom he had been acquainted in earlier years. Police efforts at possible identification of the second robber continued for some time without avail, so that a warrant ultimately was issued on May 16, 1964 charging this appellant with the robbery. Upon learning that the appellant had been arrested and was incarcerated in Texas, the robbery warrant was lodged as a detainer pending release of the appellant from the Federal Correctional Institution at Texarkana, Texas, on February 5, 1965. He was then placed under arrest on the warrant which had been issued here. On February 23, 1965, the indictment in the present case was returned, and three days later the appellant was ordered removed to this jurisdiction. The appellant's trial in the District Court commenced on May 26, 1965.

I

Appellant has contended that he was prejudiced in that counsel should have been appointed for him at the removal hearing in Texas and while he was being questioned prior to removal. No such claims had been advanced in the Dis-

trict Court. In any event no confessions or admissions obtained during the Texas detention were used in evidence at the trial. The removal had finally been ordered upon production of a certified copy of the indictment in accordance with FED.R.CRIM.P. 40(b) (3). Neither the lack of counsel in Texas nor the period of detention erroneously affected the trial in this District. The claim of denial of a speedy trial has been raised for the first time on this appeal. We are satisfied that there has been no denial of substantial rights.[1]

## II

■ The appellant's trial counsel during an extensive cross examination sought to undermine Thorne's "one hundred per cent sure"[2] identification of the appellant. The attorney went into the description given to the police by Thorne, his appearance at a line-up and much other background. Counsel then developed that while Thorne had recognized the appellant as a person whom he had known at neighborhood dances many years earlier, he was unable to recall the appellant's name. Under those circumstances, after examination of photographs at headquarters on the night of the robbery, he selected a photograph of this appellant and thus established the link which yielded this appellant's name. Actually the identification was made after Thorne had examined a color slide rather than the black and white copy which was offered at trial. Defense counsel stated that he did not demand "that the color slide be brought here if this is a copy of the color slide that he has identified." Since the photograph had so been blanked out that no information as to the appellant or other police data remained, the defense counsel informed the court he had no other objection. We think the trial judge did not err in his handling of this phase of the case.[3]

## III

■ The motion for acquittal was based upon the alleged insufficient evidence of identification. Appellant's trial counsel contended Thorne had relied upon a prior acquaintance with the appellant some twenty-five years earlier. The jury was being allowed to speculate, counsel argued. We think the trial judge properly could conclude that a jury question had been presented. But the identification issue nonetheless only serves to emphasize the more the seriousness of the appellant's fourth contention to which we now turn.

## IV

On cross examination appellant's trial counsel asked Thorne, the principal witness, if he had seen the officers "write down anything" he had said when he was reporting the robbery. That he might have pursued such inquiries may be assumed, but he did not do so. The judge interrupted and asked "Any Jencks' statement?" The prosecutor answered "Yes, your Honor." In the presence of the jury the *judge*[4] then said:

"Give them to counsel. Mark them first for identification.

"Why don't we improve our time by taking a recess at this time and give counsel all the Jencks' statements for all the witnesses that are going to come on?"

1. Cf. James v. United States, 104 U.S.App. D.C. 263, 261 F.2d 381 (1958), cert. denied, 359 U.S. 930, 79 S.Ct. 613, 3 L.Ed. 2d 631 (1959); Smith v. United States, 118 U.S.App.D.C. 38, 331 F.2d 784 (*en banc* 1964).

2. To borrow from the text of defense counsel's question.

3. United States v. Forzano, 190 F.2d 687, 689 (2 Cir. 1951); cf. Smith v. United States, 119 U.S.App.D.C. 272, 340 F. 2d 797 (1964); Williams v. United States, 120 U.S.App.D.C. 244, 345 F.2d 733, rehearing *en banc* denied (1965).

4. This trial was held before the release of our opinion in Johnson v. United States, *infra* note 5.

And after recess, the prosecutor stated that

"[T]he Government has turned over to the defense attorney a grand jury summary of the witness' testimony and also three police forms containing summarized versions of the testimony of the witnesses.

"The Court: Of all witnesses that you are going to use?

"[The prosecutor]: That's correct, your Honor."

And all such "statements" were marked as Government Exhibits 1, 2, 3 and 4 for identification. The *defense* [5] had not asked for the statements.

Whether to use the statements at all, to make a determination as to their effectiveness *vel non* was for the defense.[6] And the exhibits had not thereafter been offered or received in evidence. Out of that background arose an infirmity which we can not ignore.

The Government's witness McNeill on direct examination was asked if he saw in the courtroom one of the two robbers. He could say only "I see a man that looks very, very much like one of them," indicating Reichert. It was brought out that he had given a description of the two men to an officer. He had examined photographs at the Robbery Squad, but if he identified any photograph as that of this appellant, the record does not show it.

In short, as the prosecutor observed in his closing statement, "identification in this case is a crucial point." That theme had run throughout his argument. He pointed out that "The witnesses reported it to the police promptly, gave *statements* [7] to the police promptly."

The prosecutor continued:

"Now, you remember that the Government turned over to the defense attorney *four different statements made by the witnesses* in this case. Do you remember that? And did you see counsel impeach any of the Government witnesses *with any of their earlier statements?*

"Now, ladies and gentlemen of the jury, we submit to you that the descriptions, *the report,* the facts in this case are unimpeached. Do you recall counsel impeaching the descriptions of either one of these two robbers?"

Vigorous, even zealous argument is one thing, for the prosecutor is an advocate. What might have been set forth in the "four different statements" had not been made to appear. Whether such statements contained descriptions of the robbers or not, the jury could not know. Whether or not the "four" statements dealt with other aspects of the case than the issue of identification is not apparent.

5. The Jencks Act, 71 STAT. 595, 18 U.S.C. § 3500, requires that after "a witness called by the United States has testified on direct examination, the court shall, *on motion of the defendant * * *"* (emphasis added) order the production of certain statements, as we outlined in Saunders v. United States, 114 U.S.App. D.C. 345, 316 F.2d 346 (1963); Hilliard v. United States, 115 U.S.App.D.C. 86, 317 F.2d 150 (1963). If a hearing be necessary for the judge to determine, for example, whether the Government papers are producible, Campbell v. United States, 365 U.S. 85, 92, 93, 81 S.Ct. 421, 5 L.Ed.2d 428 (1961), or meet the Act's definition of "statements" subject to order, Clancy v. United States, 365 U.S. 312, 314, 81 S.Ct. 645, 5 L.Ed.2d 574 (1961), that hearing should be conducted outside the presence of the jury, Moore v. United States, 117 U.S.App.D.C. 254, 328 F.2d 555 (1964). We have pointed out additionally that even motions for the production of such statements should be made outside the hearing of the jury, and that the actual handing over of the statements should take place with the jury absent, or at least unaware that the step has been taken. Johnson v. United States, 121 U.S.App.D.C. 19, 22, 347 F.2d 803, 806 (1965).

6. Clancy v. United States, *supra* note 5.

7. Italics in quoted material have been supplied.

But the clear intimation of the argument was that the prosecutor knew personally [8] that the "statements" were damaging and tended to corroborate the witnesses upon whom the Government relied. But there was no evidence to such effect, indeed the statements themselves had not been received. If the prosecutor had in mind some other purpose than that the jury should rely upon the representations implicit in the references we have emphasized, we do not perceive it. The jury very possibly could have regarded the Government's attorney as an unsworn witness attesting that the witnesses had not been impeached because on the basis of their statements, not in evidence, they could not have been.[9]

The possibly serious prejudicial effect of the episodes under discussion could scarely have been diminished when the trial judge in his instructions told the jury that

"[Y]ou may consider the *reports* made by the identifying witness or witnesses after the crime and the description given by the witness or witnesses to the police of the persons involved in the crime; *and this includes statements made immediately after the crime and those made at a later time.*"

 We find ourselves unable to conclude that no prejudice had here occurred, not in terms of foul blows or appeals to passion, to be sure.[10] Rather, we reiterate that as to the one critical issue in the case, counsel should not have premised his argument upon evidence which had not been admitted,[11] particularly respecting the "statements" which had been produced under the circumstances we described.

Reversed.

8. Cf. Berger v. United States, 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1935).

9. Johnson v. United States, *supra* note 5, 121 U.S.App.D.C. at 21, 22, 347 F.2d at 805, 806.

10. Cf. Berger v. United States, *supra* note 8; Viereck v. United States, 318 U.S. 236, 247, 63 S.Ct. 561, 87 L.Ed. 734 (1943).

11. Johnson v. United States, *supra* note 5.