John HARRIS, Jr., Appellant,

v.

**UNITED STATES of America,**
**Appellee.**

**No. 21392.**

United States Court of Appeals
District of Columbia Circuit.

Argued May 8, 1968.

Decided Sept. 17, 1968.

Mr. Jeffrey M. Glosser, Washington, D. C., (appointed by this court) for appellant.

Mr. Daniel J. Givelber, Asst. U. .S. Atty., with whom Messrs. David G. Bress, U. S. Atty., Frank Q. Nebeker and William L. Davis, Jr., Asst. U. S. Attys., were on the brief, for appellee.

Before BAZELON, Chief Judge, and WILBUR K. MILLER, Senior Circuit Judge, and BURGER, Circuit Judge.

BURGER, Circuit Judge:

Appellant was convicted in the District Court of the unauthorized use of a motor vehicle under 22 D.C.CODE § 2204 (1967). His appeal raises only one issue: the propriety of certain remarks made by the prosecutor in his closing argument to the jury.

This claim is raised for the first time on appeal as "plain error" under Rule 52(b) FED.R.CRIM.P. At trial there was no objection—either during the argument or thereafter, at the bench —and no request for a corrective instruction, or motion for a mistrial. In short, Appellant invoked none of several possible methods for bringing these remarks to the attention of the trial judge who was best able to assess their effect on the jury and to undertake corrective measures. The problem of raising objections to improper argument of either counsel presents obvious practical difficulties. Counsel may, of course, object during the argument, but unless the departure from the proprieties is egregious neither the court nor the jury is likely to look favorably upon such an interruption at that stage. The more usual treatment is for counsel to approach the bench at the conclusion of the summing up and

request an immediate instruction to correct the impact of objectionable material. In the gravest situation it may be his duty to raise the issue of a mistrial. However, since none of these avenues was pursued here, we find no basis for reversal. *See* Gibson v. United States, —— U.S.App.D.C. ——, 403 F.2d 166 decided Feb. 12, 1968, amended May 1, 1968). The trial judge may also properly stop a lawyer whose summation exceeds permissible grounds; the judge's interruption does not involve the risk that counsel takes when he objects in the midst of a closing argument and such action by the court, while limited to serious transgressions, may avoid declaring a mistrial or reversible error.[1]

It is nevertheless clear that the prosecutor's remarks in the present case were of a kind that ought not be made. The defense was based upon Appellant's testimony that he had not stolen the car in question but that someone he presumed to be its owner, and who was unknown to Appellant, had lent him the car. His claim was that when he could not find this person later in the evening in order to return the car he decided to keep it overnight and return it the next morning to the parking lot where he had borrowed it. Before morning, however, he was arrested. The complainant testified that at approximately 10:00 p. m. he had parked his car by the stage door of the theater in whose parking lot Appellant testified the loan was made, and that when he returned the car had been removed. The Appellant testified that the accommodating stranger gave him the car at about 8:30 p. m. Thus complain-

ant's testimony was that he did not arrive at the theater with his car until nearly two hours *after* Appellant said the "Good Samaritan" lender had turned it over to him. It is, of course, not surprising that the jury declined to believe this excessively implausible tale.

But our concern is not with the merits of the case, since the evidence against Appellant—including his own bizarre story—is overwhelming. The prosecutor attacked Appellant's version as an incredible tale. This was, of course, a permissible argument. But he went beyond this and made comments on Appellant's testimony that we consider of questionable propriety. He stated: "I ask you to reject it in toto the defense of John Harris because it reeks of fabrication, it lacks merit, it is not reasonable." He went on: "He would urge upon you that his defense is that he took this car in innocence [*sic*] but mistaken belief that he had the consent of the owner. If you really believe that, then he is pulling the wool over your eyes." And further: "Reasonably, there is a total fabrication. I would submit, ladies and gentlemen, it is a lie."

We address ourselves to these remarks not because we view them as having had significant impact on this case but because of the frequent nonobservance of the prohibition against expressions of personal opinions on the ultimate issue by counsel. The challenged statements are in essence an opinion of counsel as to the veracity of witnesses in circumstances where veracity may determine the ultimate issue of guilt or innocence.[2] Appellant's testimony is a

---

1. Although we agree generally with the position expressed in the concurring opinion as to the trial judge's responsibility to deal with impermissible argument, we must make clear that a trial judge should not interrupt every argument which he thinks undesirable. Here as in other areas there are "gray zones" of argument which, though they should not be made, do not warrant interruption and would not support a mistrial. The choice to be made by the trial judge is one of sound judicial discretion which should not be dis-

turbed in the absence of abuse. The problem is one of balance; a serious transgression is impermissible by definition and it is as to these that intervention by the trial judge is called for. Other deviations can be dealt with by the trial judge's post-trial admonition to counsel to avoid repetition of any departure from proper argument. This has long been an accepted method of instructing lawyers on courtroom conduct.

2. Canon 22 of the American Bar Association's Canons of Professional Ethics deals

"lie" or "fabrication" only if the jury accepts all of the complainant's testimony and rejects the hypothesis that the claimed third person did intervene and Appellant merely forgot the precise time at which the events in question occurred. Appellant's testimony permitted the prosecutor to ask the jury to consider whether it was implausible, unbelievable, highly suspect, even ridiculous. Many strong adjectives could be used but it was for the jury, and not the prosecutor, to say which witnesses were telling the truth. Neither counsel should assert to the jury what in essence is his opinion on guilt or innocence. Yet this is the effect of remarks such as those of the prosecutor here when the accused gives testimony directly conflicting with that of the government's witnesses.

The precise words here challenged were pointless, if for no other reason, because of the availability of more effective means of characterizing an implausible story.[3] This is more than a matter of semantics; the purpose of the rule forbidding expression of opinion of counsel on the ultimate issue is to keep the focus on the *evidence* and to eliminate the need for opposing counsel to meet "opinions" by urging his own contrary opinion. The impropriety of substituting an attorney's view of the case for the evaluation of the evidentiary facts has been discussed by Drinker in the context of stating one's personal view of his case:

> There are several reasons for the rule, long established, that a lawyer may not properly state his personal belief either to the court or to the jury in the soundness of his case. In the first place, his personal belief has no real bearing on the issue; no witness would be permit-

ted so to testify, even under oath, and subject to cross-examination, much less the lawyer without either. Also, if expression of personal belief were permitted, it would give an improper advantage to the older and better known lawyer, whose opinion would carry more weight, and also with the jury at least, an undue advantage to an unscrupulous one. Furthermore, if such were permitted, for counsel to omit to make such a positive assertion might be taken as an admission that he did not believe in his case.

H. DRINKER, LEGAL ETHICS 147 (1953) (footnotes omitted).

The First Circuit adopted this reasoning as the basis for a decision that a prosecutor's expression of his "personal opinion of the trustworthiness of the government's evidence and the consequent guilt of the accused" was contrary to Canon 15 and merited a reversal. The Court stated:

> To permit counsel to express his personal belief in the testimony (even if not phrased so as to suggest knowledge of additional evidence not known to the jury), would afford him a privilege not even accorded to witnesses under oath and subject to cross-examination. Worse, it creates the false issue of the reliability and credibility of counsel. This is peculiarly unfortunate if one of them has the advantage of official backing.

Greenberg v. United States, 280 F.2d 472, 474–475 (1st Cir. 1960) (footnote omitted).[4]

██ The challenged statements of the prosecutor here do not fall precisely into the prohibitions of Canon 15 or the obser-

---

with "candor and fairness" and provides in part: "It is not candid or fair for the lawyer * * * in argument to assert as a fact that which has not been proved * * *." And Canon 15 provides that: "It is improper for a lawyer to assert in argument his personal belief in his client's innocence or in the justice of his cause."

3. The prosecutor used the universally accepted and proper form of comment on

the contradictions in testimony at one point in his closing statement when he told the jury: " * * * Mr. Harris would urge upon you at the time he got this car it was about 8:00 o'clock, and if you are to believe Mr. Harris, if he got the car at 8:00 o'clock, then you must disbelieve Mr. Gray. * * *"

4. There was, in the *Greenberg* case, a timely objection to the argument that was overruled by the trial court.

vations of Drinker but they come disturbingly close to it since they were another way of saying the accused was guilty in the prosecutor's opinion. We might add to what others have said on the undesirability of such practices a further comment: lawyers should train themselves to eschew opinions in the course of arguments to juries because this diverts them as well as jurors from their respective functions. By avoiding expressions of personal opinions, the advocates will tend to concentrate on facts, issues and evidence, and make reasoned, even if vigorous, arguments.

■ The prosecutor is certainly free to strike hard blows at witnesses whose credibility he is challenging. But what he may not do is divert the focus of the jury's consideration of the case from the facts in evidence to the attorney's personal evaluations of the weight of the evidence. The personal evaluations and opinions of trial counsel are at best boring irrelevancies and a distasteful cliche-type argument. At worst, they may be a vague form of unsworn and irrelevant testimony.

The frequency with which violations of standards of permissible argument occur[5] is disturbing. We must rely primarily on the trial judges to make clear that they do not want such argument. Since a large number of lawyers—prosecutors and defense attorneys alike—seem to be uninstructed in the rudimentary elements of proper advocacy, trial judges may well need to take steps to make the "ground rules" known to the lawyers who appear before them and to deal promptly and firmly with deviations from proper conduct.

We take this occasion to remind the bar again that departures from accepted standards of closing argument, whether by prosecution or defense, should not occur. Although we do not elect to impose the sanction of a reversal, all members of the bar are on notice that disciplinary mechanisms are available to the trial courts to deal with unlawyerlike behavior. Lawyers who fail to learn or remember the rules of courtroom conduct may need the forcible reminders which will tend to upgrade the courtroom performance of lawyers generally.

Affirmed.

BAZELON, Chief Judge (concurring):

On the particular facts of this case, I do not believe the prosecutor's remarks, although highly improper, were prejudicial enough to warrant reversal. I wish to make clear, however, that my affirmance is not grounded on the fact that appellant's counsel failed to object to the remarks at trial. It would be ignoring the realities of criminal practice to place such a heavy emphasis on the adversary system.

In the typical criminal case, defendant is represented by a court-appointed lawyer who may have little criminal or even trial experience. Because of this inexperience, counsel will not always know when or how to object. It will frequently be up to the judge to ensure that errors are prevented or corrected. Accordingly, whenever counsel embarks on an impermissible argument, the judge should not hesitate to stop him. I would not speculate in the abstract as to whether there is a class of improper arguments which a judge must not interrupt.

If the trial judge fails to intervene, the appellate court must then review the

5. *See* Gibson v. United States, *supra.*
More serious, and even more a cause for alarm at the apparent lack of instruction or preparation available for prosecutors in our courts at the present time, are those cases revealing that the prosecutors have argued to the jury in direct violation of Canon 22, on the basis of facts not placed in evidence. *See* Garris v. United States, 129 U.S.App.D.C. 96, 390 F.2d 862 (1968); King v. United States, 125 U.S.App.D.C. 318, 329, 372 F.2d 383, 394 (1967); Reichert v. United States, 123 U.S.App.D.C. 294, 359 F. 2d 278 (1966); Johnson v. United States, 121 U.S.App.D.C. 19, 347 F.2d 803 (1965).

error for itself.[1] The crucial consideration on that review must be the overall impact of the error on the fairness of the trial, not counsel's failure to object at trial.[2]

---

1. Fed.R.Crim.P. 52(b) has always permitted appellate review of plain errors not challenged below.

2. It should be remembered that sometimes even experienced counsel will decide not to object to a seriously prejudicial statement for fear of emphasizing it to the jury.