UNITED STATES of America

v.

Randolph JENKINS, Appellant.

No. 23337.

United States Court of Appeals,
District of Columbia Circuit.

Argued April 10, 1970.

Decided Aug. 12, 1970.

Mr. Warren R. King, Asst. U. S. Atty., with whom Messrs. Thomas A. Flannery, U. S. Atty., and John A. Terry, Asst. U. S. Atty., were on the brief, for appellee.

Before FAHY, Senior Circuit Judge, and WRIGHT and ROBINSON, Circuit Judges.

FAHY, Senior Circuit Judge:

The appeal is from his conviction of rape for which appellant was sentenced in 1963 to imprisonment of ten to thirty years. No appeal was taken from the judgment then entered. Thereafter, however, in Jenkins v. United States, 130 U.S.App.D.C. 248, 399 F.2d 981 (1968), for reasons there stated this court directed the District Court to vacate the sentence so that an appeal could be taken after resentencing if the trial court found an appealable non-frivolous issue. The District Court vacated the sentence, a new sentence of six to eighteen years was imposed, and this appeal taken. We affirm.

The evidence shows without dispute that one evening in a Washington neighborhood the complaining witness was followed by a young man for some little distance, was overtaken, dragged into an alley, from the alley into a basement and was there sexually assaulted. The disputed factual issue is whether appellant was the man. The complaining witness testified that he was. She said she was able to see his face at the time, that there was a light over the basement door, and she had a good look at him when he dragged her into the basement and when he was having intercourse with her.[1]

The investigation leading to the identification of appellant prior to trial was careful. The victim gave the police a description of her attacker as about 5'7" tall, of medium build, and wearing a beige jacket—a windbreaker with elastic in the waist. Pictures shown to her by one of the detectives resulted in no iden-

Mr. Theodore R. Newman, Jr., Washington, D. C. (appointed by this Court) for appellant.

---

1. In a ruse she was allowed to return to the alley and when there fled, the man running in the opposite direction.

tification. In the days following the attack she had several meetings with the police. On five or six occasions they brought to her home or asked her to come to see various young men. She identified none of these as the attacker. She rode with a detective throughout the neighborhood to see if he would be out in the street, without result. Some two weeks after the attack, however, she was asked to look at three young men at a Precinct Station. She asked each of them to say some words which had been spoken to her at the time of the attack. She identified one of them as the assailant and later learned that he was Randolph Jenkins, the appellant. He was a brown-skinned young man, about 5'7", of medium build, with broad shoulders and a soft voice.

## I.

In the factual situation above outlined we cannot accept appellant's contention that his motion for judgment of acquittal, stated on appeal to rest upon inadequate corroboration of the complaining witness's identifying testimony, should have been granted.[2]

■ While it is a well established general rule in this jurisdiction that for conviction of a sex offense the testimony of the victim must be corroborated both as to the corpus delicti and the identity of the accused,[3] the standard by which to determine the adequacy of identifying evidence is not as stringent as is required for proof of the offense itself. In Franklin v. United States, 117 U.S. App.D.C. 331, 335, 330 F.2d 205, 209 (1963), Judge Wright wrote:

> Perhaps, in the circumstances of a particular case, a convincing identification by the complaining witness based on adequate opportunity to observe need not be further corroborated, but this is not such a case.

Again, in United States v. Terry, 137 U.S.App.D.C. 267, 273, 422 F.2d 704, 710 (1970), we noted in terms fully applicable to this appeal:

> The complainant had an ample opportunity to observe her attacker, and she gave police an initial description which was consistent with the appellant's physical characteristics.

In *Terry* we continued: "this is an appropriate instance for relaxation of the normally rigid corroboration standards." And more recently in Carter v. United States, 138 U.S.App.D.C. 349, 427 F.2d 619 (1970), we repeated: "the facts of a particular case may be such that a convincing identification by the complaining witness based upon adequate opportunity to observe need not be further corroborated."[4] *See, also,* Thomas v. United States, 128 U.S.App.D.C. 233,

2. Appellant had a twin brother, but the complaining witness testified she could distinguish the two even though an acquaintance of the brothers said he could not. She testified, "there's a lot of difference in them. For instance, he is of a darker complexion. They just don't look alike."

Appellant also points out that the complaining witness had lost her glasses during the time she was attacked. She testified, however, that she did not always use these glasses. On cross-examination she said they were necessary only for reading, or when her eyes hurt, and that on the street she could see as well with the glasses off as on.

3. *See, e. g.,* Allison v. United States, 133 U.S.App.D.C. 159, 409 F.2d 445 (1969); Coltrane v. United States, 135 U.S.App.

D.C. 295, 418 F.2d 1131 (1969), and cases cited therein.

4. The complaining witness testified that on the day after the night of the attack she gave a signed statement to the police in which she described the man as about 5'7", medium built, wearing a beige jacket. Later in her testimony she described the appellant whom she had identified as her assailant. This description was as follows:

> [M]edium brown skin, about 5'7" also, broad shoulders, a very soft voice, medium built.

No effort was made to show that either of these descriptions did not fit the appellant. Moreover, appellant when cross-examined admitted that at that time he owned a beige jacket like the one the complaining witness described as worn by her assailant.

234, 387 F.2d 191, 192 (1967), and Calhoun v. United States, 130 U.S.App.D.C. 266, 270, 399 F.2d 999, 1003 (1968).

██ Applying these principles to the evidence we hold that the trial court did not err in submitting the factual issue of identification to the jury.

## II.

It is also contended that the court erred in failing explicitly to instruct the jury of the necessity of corroboration of the complaining witness's identification. In the first place, as we have pointed out, the evidence of identification was strong enough without further corroboration. When we add that the identity of the man was the only critical issue of fact, and this was understood by the jury, the reference in the court's charge to the necessity for "corroboration of her testimony * * * according to the rule prevailing in the District of Columbia," though stated in a context which called the jury's attention to the commission of the crime rather than to who committed it, cannot reasonably be thought to have misled the jury. This appraisal of the situation is supported by the closing argument of defense counsel. He pointed out that the defense sought to prove appellant was not the person who committed the assault if it occurred. He stated the situation as follows:

> I say to you, ladies and gentlemen, there has got to be some corroboration —and His Honor will so instruct you —of the testimony of the complaining witness who, I say, may have attempted to but couldn't have told the whole truth because she simply didn't know.

> This whole case hinges on one of identification.

We find no reversible error in the omission of greater explicitness in the charge as to the need of corroboration of the identification testimony.[5]

## III.

At trial the complaining witness was shown a beige jacket which she explained in some detail was like the one her attacker wore. Possession of the jacket had been obtained by a search warrant for the property of appellant while he was in jail. The officer who obtained the warrant testified the jacket was in the custody of the Superintendent of the jail and was taken from appellant's property. This witness also identified the jacket and stated that he had shown it to the complaining witness, who had said it was similar to the one the "subject was wearing that night." When the above testimony was given the jacket was not offered in evidence. Later during the trial it was offered. Defense counsel then objected that the jacket came into the possession of the Government too long after the offense. Upon this objection being made the offer was withdrawn.

██ No objection was made, however, to the earlier testimony about the jacket. On appeal it is contended for the first time that the court sua sponte should have stricken it. The failure of the court to do so was not plain error affecting a substantial right. Had the objection been made it is by no means certain the connection of the jacket with appellant would not have satisfied the court of the admissibility of the jacket and of the testimony about it. The court never ruled on either of these matters. The offer of the jacket was simply withdrawn some time after the testimony about it had been given.

## IV.

██ On cross-examination of the complaining witness it was developed that on the day after the attack she gave a written statement to the police in which she described her assailant, and that some time later, after she had iden-

5. The case was tried before Franklin v. United States, *supra*, where for the first time in this jurisdiction the requirement of corroboration of identity was clearly stated. We add that counsel did not request the court to direct the jury's attention to the need for corroboration respecting identification as a separate matter from corroboration in general.

**144**

tified appellant, she made another statement. Defense counsel suggested to her that the description of her assailant in the second statement differed from that in the first. She initially replied that there was a difference, then denied it, "because I never gave—Yes, sir, they had to be [identical]." The matter was brought up again on redirect examination by the Government. She again said there was no difference in the two statements. A lunch recess intervened. On resumption of redirect she was asked whether during the recess she had occasion to see anything that refreshed her recollection. She replied that she had, and added that there really was no second statement, that after the lineup she had indicated she knew who the person was who attacked her. It appears a secretary took notes of what she said. These were not signed but were read to her. At bench conference defense counsel then stated that since he had just learned of the identity of the so-called statement he thought he should have the benefit of seeing it. Counsel for the United States had the statement marked in open court as an exhibit and had it identified by the complaining witness. No objection was made to this procedure. Appellant now contends that the exhibition of the paper and its identification in the presence of the jury was error, citing Johnson v. United States, 121 U.S.App.D.C. 19, 347 F.2d 803 (1965). That case dealt with a statement of a Government witness produced for the defense under the Jencks Act, 18 U.S.C. § 3500. Recognizing the rule that prior consistent statements may not be used to support a party's unimpeached witness, the court found error due to the prosecutor's comments to the jury that the prior statement was not used by de-

fense counsel for impeachment purposes and that there was no difference in the two statements. These comments, said the court, accomplished virtually the same result as if the statement, though inadmissible, had been placed in evidence.[6] Contrary to the Government's contention in the present case it is true that the so-called second statement was given to defense counsel in compliance with a request authorized by the Jencks Act. Conformably with the procedure prescribed in Johnson it would not have been given to defense counsel in the jury's presence. Unlike the situation in Johnson, however, defense counsel's request for the statement was made after the jury's attention had been drawn by him to the prior statement in his suggestion before the jury that the later one impeached the complaining witness. It may be that in these circumstances it would have been proper for the Government actually to introduce the statement in evidence to establish the absence of a prior inconsistent statement,[7] a question we need not answer, for in any event in the circumstance in which the incident occurred, consequent upon counsel's unsuccessful attempt by reference to the statement to impeach the complainant, reversible error cannot be laid at the door of the trial court.

V.

■ (A) Nor do we find plain error in the omission of the trial court sua sponte to intervene on the basis of the statement of the prosecutor in summation that the complaining witness had not made any prior inconsistent statement. In the context in which it appears in the transcript the argument

6. In explaining our ruling in *Johnson* we said in Gregory v. United States, 125 U.S.App.D.C. 140, 146, 369 F.2d 185, 191 (1966):

It is familiar law that prior consistent statements are not admissible in evidence, and consequently it is improper to require a procedure, in exercising Jencks Act rights, which may permit the inference that the prior statements

received are consistent with the witness' testimony on trial.

7. See United States v. Lewis, 406 F.2d 486, 492 (7th Cir.), cert. denied, 394 U.S. 1013, 89 S.Ct. 1630, 23 L.Ed.2d 39 (1969); United States v. Gardin, 382 F.2d 601, 605, n. 4 (2d Cir. 1967); McCormick, Evidence § 49 at 108 (1954); cf. 4 Wigmore, Evidence § 1126 (1940).

was supported by the witness's testimony that she had not made inconsistent statements.[8]

**■** (B) It is contended further that there was prejudicial error, though again with no reservation of the point during trial, in the prosecution's suggestion in closing argument that if there had been anything different in the second statement it would have been used by the defense.[9] The case of *Johnson*,[10] *supra*, dealt also with a related problem. "It is elementary," we there said, reversing the conviction, "that counsel may not premise arguments on evidence which has not been admitted."[11] 121 U.S.App.D.C. at 21, 347 F.2d at 805. The argument condemned in *Johnson* went much further than that now considered. The Jencks Act statements which had been produced were not in evidence. Notwithstanding this, the prosecutor argued:

"There is no difference, ladies and gentlemen, in these reports made at the time of the crime. They corroborate the testimony of the police officer from the witness stand." (Emphasis added.)

121 U.S.App.D.C. at 21, 347 F.2d at 805.

As we did not in *Johnson*, so we do not in this case, approve the argument made. The remarks in the present case do not, however, fall within the ruling in *Johnson* not only because of the difference in the scope of the argument there, but also because of the difference in the manner in which the statements had come to the attention of the jury, in our case, as we have seen, consequent upon defense counsel's suggestion in the presence of the jury that the later statement was inconsistent with the earlier. It should also be noted that our opinion in *Johnson* was issued long after the trial of this case.

**■** (C) As aggravating the errors claimed to reside in the argument of the Government to the jury, counsel now, though trial counsel did not, points to the characterization of appellant in summation as a "teenage hoodlum walking the streets of Washington * * *." Surely this sort of argument should be avoided. The trial of appellant was for rape, not for being a hoodlum. It is odd that the United States through its representative should be put in the position of trying in this way to prejudice the jury by going beyond the scope of the evidence and the trial. Such tactics are inconsistent with the civilization of the law and endanger the integrity of its administration. They should be condemned by the trial court sua sponte in the presence of the jury. But we feel certain the jury convicted in this case on the basis of its view of the evidence. We add that had objection been made we are confident the court would have instructed the jury to disregard this extraneous characterization of the accused.

With the exception of his claim of ineffective assistance of counsel, which we hold to be unsupported, we have discussed all contentions raised on appeal. Any others unnoticed by counsel do not

8. The context appears from the following:
   To my mind, and I suggest to you, she was a pretty truthful witness. She was not tripped up. She was not shook up, as they say, in any way at all. She didn't make any prior inconsistent statement. She didn't falsely accuse anyone. You know it and I know it.

9. The prosecutor remarked:
   The second statement was shown to defense counsel. You don't know what was in it because it was not introduced as evidence. I suggest to you, however, that if there had been anything too different in it, it would have been used. You would have found out about it.

10. *See also* Reichert v. United States, 123 U.S.App.D.C. 294, 359 F.2d 278 (1966).

11. Similarly, in Reichert v. United States, *supra*, 123 U.S.App.D.C. at 298, 359 F.2d at 282, it was said that:
    as to the one critical issue in the case, counsel should not have premised his argument upon evidence which had not been admitted. * * *

146

in our own review of the case require consideration under the discretion residing in this court under Rule 52(b), Fed. R.Crim.P.

Affirmed.[12]

12. While not a dispositive consideration on this appeal, we note that appellant has now been released from custody on parole.