James D. MAXWELL, Appellant,

v.

UNITED STATES, Appellee.

No. 6324.

District of Columbia Court of Appeals.

Argued Sept. 12, 1972.

Decided Dec. 7, 1972.

**772**

David C. Niblack, Washington, D. C., appointed by this court, for appellant.

James W. Diehm, Asst. U. S. Atty., with whom Harold H. Titus, Jr., U. S. Atty., John A. Terry and Joseph F. McSorley, Asst. U. S. Attys., were on the brief, for appellee.

Before KELLY, KERN and NEBEKER, Associate Judges.

KERN, Associate Judge:

In January 1972, a jury convicted appellant of carrying a dangerous weapon (a pistol) in violation of D.C.Code 1967, § 22-3204. Appellant argues that he is enti-

tled to a new trial because (1) during the selection of the jury the trial court barred him from examining the list of jurors[1] which was given to his counsel, and (2) during closing argument the prosecutor characterized him in such a way as to prejudice his case before the jury.

As to the prosecutor's remarks to the jury about which appellant now complains, the prosecutor had developed during cross-examination of appellant the fact of his prior convictions for robbery, burglary and petit larceny. Whereupon the trial court, *sua sponte,* instructed the jury that:

> [A] defendant's prior criminal convictions admitted into evidence are solely for your consideration in evaluating the credibility of the witness. *It is not evidence of the defendant's guilt of the crime for which he is charged and you must not draw any inference of guilt against the defendant because of his prior conviction.* You may consider it in evaluating the credence to be given his testimony in this case. (Emphasis added.)

Shortly thereafter, the prosecutor made his summation to the jury, at the close of which he stated:

> Now, ladies and gentlemen, there is the fact of Mr. Maxwell's prior convictions. *As His Honor instructed you, they weren't produced to indicate that Mr. Maxwell was guilty . . . . The prior convictions were introduced for the purpose of impeaching his testimony, of attacking his credibility . . . .*
>
> Mr. Buccheri [the key Government witness] was alleging he [appellant] had possession of it [the gun]. Mr. Maxwell took the stand and denies it. Are you going to believe him, or are you going to believe Mr. Buccheri? When a man's word is in issue, take those things into account, just for the purpose of his cred-

---

1. It was represented during argument before us that the list contains the name, age, address and business of all jurors serving during that month in the District of Columbia Superior Court.

ibility. *Burglar, thief, robber* . . . . (Emphasis added.)

At that point, appellant's counsel objected and the trial court called counsel to the bench and admonished the prosecutor.[2] Thereafter, appellant's counsel made his summation to the jury during which he referred to the fact that appellant's prior convictions had been admitted into evidence only on the issue of credibility.

 The prosecutor's reference to appellant, *in the context of the present,* as "[b]urglar, thief, robber" could be faulted on two grounds. First, it was inflammatory language, the use of which by the Government is neither necessary nor "offensive to the dignity and good order with which all proceedings in court should be conducted." Viereck v. United States, 318 U.S. 236, 248, 63 S.Ct. 561, 566, 87 L.Ed. 734 (1943). Second, it might have confused the jury into believing either that appellant, who had been convicted of crimes *in the past,* had the *continuing* status of a criminal, or that the Government had evidence of *other* crimes which it could not introduce at this trial. However, in view of (a) the cessation by the prosecutor of his argument immediately upon using the three objectionable words, (b) the trial court's clear instruction to the jury shortly before the prosecutor's improper remark that appellant's prior convictions were put into evidence solely for a limited purpose,[3] and (c) the repetition and reemphasis of that limited purpose by *both* counsel in their own statements to the jury, we cannot conclude appellant was so prejudiced as to require another trial. *Cf.* United States v. McIntosh, 138 U.S.App. D.C. 237, 240, 426 F.2d 1231, 1234 (1970).

As to appellant's contention concerning the jury list, the following incident had occurred at his prior trial. A deputy marshal reported to the trial court that, after the jury retired to deliberate, a juror had commented about appellant looking at the jury list and then making notes. The court, with counsels' consent, called into chambers the juror who had made the comment. She said that she and two or three other jurors had noticed, and thereafter mentioned to each other, that appellant had looked at the jurors' list and then made notes while his counsel was at the bench. The juror explained:

> Well, I saw him going through it, you know, and I wondered. This was during the time when the jury was being selected. Then I wondered if he was checking, you know, who was called by name and looking up the addresses.
>
> . . . . . .
>
> . . . . [T]his was before the evidence got out that he had a record, but his looks . . . made me wonder if he had . . . been in some sort of shady business . . . and that made me wonder if . . . he were going to retaliate in some way if we found him guilty.

Appellant's counsel acknowledged that he had left the jurors' list on the counsel table while he was at a bench conference and appellant admitted that he had looked at that list. The trial court, at appellant's urging, declared a mistrial, but stated for the record that defense counsel at the retrial was

> in no way [to] allow the jury list to be available to defendant in any form or fashion.

2. It would have been desirable for the trial court to have condemned the prosecutor's improper language in the presence of the jury and have instructed the jurors to "disregard this extraneous characterization of the accused." United States v. Jenkins, 140 U.S.App.D.C. 392, 397, 436 F.2d 140, 145 (1970).

3. The better practice for the trial court would have been to repeat in its general instructions to the jury the charge it had given, *sua sponte,* at the time the prior convictions were put into evidence. *See* Dixon v. United States, D.C.App., 287 A.2d 89, 100 (1972).

When the trial, which is the subject of this appeal, commenced, the following colloquy occurred between the court and appellant's counsel:

MR. NIBLACK: I'm being aware of the problem that arose in this case when it was previously tried when a juror had observed the defendant looking at the master jury list. I have, according to Your Honor's instructions, not let him see the master jury list which includes names, addresses, occupations of all the jurors. *I would prefer that he did, but I will abide by Your Honor's instructions,* you know, that he not know this information about the jurors.

THE COURT: I don't think it is necessary for his—germane to his participation in this suit.

MR. NIBLACK: There *might* be something that he might know about addresses and occupations, normally.

THE COURT: Well, I'm not going to allow you to do it. (Emphasis added.)

█ Appellant now argues that it was reversible error for the trial court in this case to have prohibited his counsel from giving him the jurors' list. It has been held that a defendant has no constitutional right to a jurors' list. Wagner v. United States, 264 F.2d 524, 528 (9th Cir.), cert. denied, 360 U.S. 936, 79 S.Ct. 1459, 3 L. Ed.2d 1548 (1959). Neither statute nor court rule in this jurisdiction requires that a defendant receive the jurors' list in a non-capital case. We have nothing in the record to support the allegation in appellant's brief that he was singled out in this particular case for discriminatory treatment.[4] Dietz v. Miles Holding Corp., D.C. App., 277 A.2d 108, 110 n.3 (1971).

█ We can perceive no prejudice to appellant in this record as a result of his inability to examine for himself the jurors'

list. He heard the names of all the jurors as they were called to the box during selection. He could determine from his own observation their sex and approximate age. His counsel examined the 26 prospective jurors on voir dire and did in fact exercise peremptory challenges against some of the jurors called to serve. Appellant's counsel had opportunity during the selection process to confer with appellant and we find no limitation on appellant's rights in connection with a jury trial sufficient to warrant reversal in this case.

We do not by our decision today decide whether or not as a general rule the practice of barring defendants from examining jury lists is valid. We conclude only that under the particular facts and circumstances of this case there was no error justifying a new trial and the judgment must be and is

Affirmed.

4. The trial judge at the prior trial indicated that it was *not* the practice for a defendant to have the jurors' list.