**UNITED STATES of America,**

v.

**Robert SHAPIRO, Defendant.**

**No. 96–CR–1019.**

United States District Court,
E.D. New York.

Feb. 26, 1998.

Zachary W. Carter, U.S. Attorney, Eastern District of New York by David B. Pitofsky, Assistant U.S. Attorney, Brooklyn, NY, for U.S.

Robert Shapiro, Brooklyn, NY, Thomas F.X. Dunn, New York City, for Defendant.

### *MEMORANDUM AND ORDER*

BLOCK, District Judge.

On December 23, 1997, defendant Robert Shapiro ("Shapiro") was convicted, after a jury trial, of attempted escape from the custody of the Attorney General, 18 U.S.C. § 751(a), and forging the signature of an officer of a federal court, 18 U.S.C. § 505. Since his conviction, Shapiro has written several letters to the Court requesting access to juror information pursuant to the Jury Selection and Service Act (the "Act"), 28 U.S.C. § 1861 *et seq.* The Court issues this Memorandum and Order to address concerns raised by Shapiro in this correspondence.

### BACKGROUND

By letter dated September 3, 1997, Shapiro requested leave of the Court to examine jury qualification forms and other data in preparation for the filing of a motion pursuant to

28 U.S.C. § 1867 challenging the procedures used in the Eastern District of New York to select jurors. This letter was docketed in the Office of the Clerk of the Court on October 7, 1997.

Shapiro's request for juror information was addressed at a session of the Court on December 17, 1997, just prior to Shapiro's trial. The Court granted Shapiro's request; however, in response to security concerns raised by the Government, the Court specifically directed that the information was to be turned over to Thomas F.X. Dunn ("Dunn"), who acted as Shapiro's attorney at trial.[1] The Court advised Dunn on the record:

> And I'm instructing you to do the appropriate job to satisfy yourself, on behalf of your client, that the law has been satisfied, or that there's no basis for proceeding with a motion, should we come to that decision, or if there is a basis for proceeding to that motion with respect to the issue that he has chosen to raise.

12/19/97 Tr. at 35. The Court specifically rejected the Government's argument that it could satisfy its responsibilities under the statute by providing information only in respect to the 41 potential jurors in Shapiro's own case, stating "how ... is somebody supposed to determine whether or not the law has been complied with by looking at 41 names and people?" *Id.* at 71. The Court stated on the record at that time that more extensive disclosure of jury information was required since Shapiro "[was] supposed to have the opportunity to find out whether the system and the law has been complied with, whether there is proper representation throughout the community and elsewhere." *Id.*

On December 19, 1997, the Court received a memorandum from Robert C. Heinemann ("Heinemann"), the Clerk of the Court, in response to the Court's concerns as to the availability of sufficient information to satisfy an appropriate inquiry under the Act. This memorandum was marked as Court Exhibit "2." According to the memorandum, pursuant to the jury plan for the Eastern District

of New York the Clerk's Office refills the jury wheel every two years. The most recent jury wheel began on September 1, 1997. Heinemann stated that the jurors selected for the Shapiro trial were drawn from a pool of 750 citizens who were sent summonses for the December 15, 1997 return date. He also advised that tens of thousands of citizens received a jury qualification questionnaire for the September 1, 1997 two-year jury wheel.

On December 22, 1997, the Court again addressed the issue of juror information with the parties. At that time, the Court indicated that Dunn should be given access to the information regarding the 750 people who were called on December 15, 1997. The Court stated at that time:

> When I spoke with [Heinemann] ... he's talking about a total of 750 citizens were sent summonses for that return date. That's a large number and I think that that's really going to give you fairly what you need. I'm not going to really make him make available tens of thousands of people who receive qualification questionnaires for the September 1, 1997 two year jury wheel. That would be unnecessarily burdensome. I don't think it's indicated. So, in the exercise of my judgment call, I think that this information is sufficient. After you look at the 750 names, which Mr. Dunn can do, you can get a sense as to whether there is any problem that seems to surface there to support a motion if you deem it necessary.

Trial Transcript of December 22, 1997, at 130–131. The Court also reiterated its prior ruling that Dunn would inspect the records on Shapiro's behalf. *Id.* at 131.

As noted above, since his conviction, Shapiro has written the Court on several occasions to request the release of jury information to him directly. In order to clarify the responsibilities of the Clerk's Office, as well as Shapiro's legal rights, the Court issues this Memorandum and Order.

---

1. Although Shapiro initially indicated that he intended to proceed *pro se,* with Dunn serving as stand-by counsel, he later changed his mind and informed the Court that he wanted Dunn to represent him at trial. Trial Transcript of December 17, 1997 ("12/19/97 Tr.") at 191.

## DISCUSSION

Shapiro's claimed right to inspect juror information derives from 28 U.S.C. § 1867(f), which grants a litigant access to juror information in order to prepare a motion directed at the procedures used to empanel juries. Section 1867(a) provides that in a criminal case such motion must be made either before the voir dire begins or "within seven days after the defendant discovered or could have discovered, by the exercise of diligence, the grounds therefor, whichever is earlier ...." "This timeliness requirement was provided to prevent dilatoriness and to ensure the rapid disposition of claims that are spurious." *United States v. Bearden,* 659 F.2d 590, 595 (5th Cir.1981)(citing H.R.Rep. No. 1076, 90th Cong., 2d Sess. (1968), reprinted in 1968 U.S.Code Cong. & Admin. News. 1792, 1805).

The Supreme Court made it clear in *Test v. United States,* 420 U.S. 28, 95 S.Ct. 749, 42 L.Ed.2d 786 (1975), that a litigant has "essentially an *unqualified* right to inspect jury lists ... in order to aid ... in the 'preparation' of motions challenging jury-selection procedures." *Id.* 420 U.S. at 30 (emphasis in original). Shapiro cited this authority in support of his request, and the Court relied upon it in granting the request. However, in light of Shapiro's well documented history of behavioral problems, *see, e.g.,* Court Exhibit "1" (United States Department of Justice, Bureau of Prisons, Competency to Stand Trial Evaluation for Robert Shapiro, dated August 27, 1997), the Court clearly acted within the exercise of its discretion in determining, for security reasons, that the information should not be turned over to Shapiro, but to Shapiro's attorney Dunn. *See United States v. Beaty,* 465 F.2d 1376, 1381–1382 (9th Cir. 1972) ("The court was free to fashion how the inspection should be made and could have provided that appellant's attorney or his investigator make the inspection if the court believed and found that appellant presented a security problem."); *see also United States v. Davenport,* 824 F.2d 1511, 1515 (7th Cir. 1987) (holding that certain information need not be disclosed to defendants generally because "there would exist the possibility of substantial abuse of the information the forms contain, which could have serious consequences for individual jurors and the system.").

To the extent that Shapiro demands that he be provided with the information personally, the Court adheres to its earlier decision that, for security reasons, Shapiro will not be permitted to review the information and that Dunn, Shapiro's attorney in this case, must undertake the examination on Shapiro's behalf.

The Court now turns to Shapiro's allegations in a February 4, 1998 "Memorandum" to the Court that Dunn, who was appointed and not retained to serve as Shapiro's attorney, has demanded payment from Shapiro directly before he will review the jury information. The Court has no independent basis to credit this contention, and in view of the history of Shapiro's indiscriminate, abusive, and vituperative conduct toward Dunn, and Dunn's credible representation under difficult circumstances, this naked allegation is presumptively suspect. Nonetheless, the Court hereby directs Dunn forthwith to make the requisite review and appropriately counsel Shapiro in respect to his findings as part of his ongoing CJA obligations.

In light of the Act's concern with timeliness, the Court is unwilling to allow this issue to remain unresolved for an indeterminate period of time. Therefore, the Court hereby orders that Dunn complete his inspection of the jury information by Friday, April 10, 1998. By the express terms of § 1867(a), any motion brought by Shapiro challenging the jury procedures in this district must be filed with the Court and served on the United States Attorney's office within seven days of the completion of that examination, or by Friday, April 17, 1998, whichever comes earlier. The Court determines that this deadline balances Shapiro's right to obtain the information and to challenge the jury selection process, if warranted, against the Act's clear intent that such challenges be brought promptly. This deadline also seeks to minimize the potential burdens that the litigation of this issue may place upon the Clerk's Office.

## CONCLUSION

For the foregoing reasons, Dunn is directed to examine those jury records specified by the Court at its December 22, 1997 session, and to consult with Shapiro regarding the basis for any such motion, on or before April 10, 1998. Any motion challenging jury selection procedures in this district must be filed within seven days of the completion of such examination, or by April 17, 1998, whichever is earlier.

**SO ORDERED.**