Larry A. GAUSE and Karlepa Wilkey, Appellants,

v.

UNITED STATES, Appellee.

Nos. 06–CF–20, 06–CF–47.

District of Columbia Court of Appeals.

Argued En Banc Sept. 15, 2009.

Decided Nov. 4, 2010.

---

Mikel–Meredith Weidman, Public Defender Service, with whom James Klein, Public Defender Service, was on the brief, for appellant Larry A. Gause.

Peter H. Meyers, appointed by the court, for appellant Karlepa Wilkey.

Mary B. McCord, Assistant United States Attorney, with whom Channing D. Phillips, Acting United States Attorney at the time the brief was filed, and Roy W. McLeese III, Assistant United States Attorney, were on the brief, for appellee.

Peter J. Nickles, Attorney General for the District of Columbia, Todd S. Kim, Solicitor General, Rosalyn Carlbert Groce and Donna M. Murasky, Deputy Solicitors General, were on the brief for the District of Columbia as amicus curiae.

Before WASHINGTON, Chief Judge, and RUIZ, REID, GLICKMAN, KRAMER, BLACKBURNE–RIGSBY, THOMPSON, and OBERLY, Associate Judges, and SCHWELB, Senior Judge.

BLACKBURNE–RIGSBY, Associate Judge:

In this case, we convened en banc to consider whether the District of Columbia Jury System Act ("DCJSA"),[1] which includes a statutory right to inspect court records used in connection with the jury selection process, requires a predicate showing that the requested materials will ultimately yield evidence of a "substantial failure to comply with" the DCJSA. We decline to impose a threshold showing requirement, because to do so would undermine the DCJSA's stated purpose by creating an unnecessary hurdle for litigants seeking discovery of jury pool information in connection with a challenge to the fairness of the jury selection process. We conclude that the DCJSA neither imposes, nor requires this court to impose, such a threshold showing requirement and we therefore reverse and remand for further proceedings consistent with this opinion.

In declining to impose a threshold showing requirement, we begin our analysis by comparing the DCJSA with its predecessor, the federal Jury Selection and Service Act ("FJSSA"), 28 U.S.C. §§ 1861–1878 (1978). In Test v. United States, 420 U.S. 28, 30, 95 S.Ct. 749, 42 L.Ed.2d 786 (1975) (per curiam), the Supreme Court analyzed the FJSSA's statutory provisions, as well as its stated purpose, and concluded that the FJSSA confers an "unqualified right" to discovery under the statute. Next, we consider differences between the FJSSA and the DCJSA; although the statutes are nearly identical in their stated purposes, they differ in their structure and organization. There is one difference in particular that we acknowledge and analyze-the absence in the DCJSA of explicit language stating that litigants may inspect jury records. But we conclude that this difference alone, without any clear legislative history or intent, is insufficient to accord less protection to District of Columbia litigants under the DCJSA than was accorded to them under the FJSSA, especially given the virtually identical purposes of both statutes. Finally, we make clear that trial judges retain important discretion over the scope and timing of discovery pursuant to the DCJSA.

## I. Background and Procedural History

Following a jury trial in 2005, appellants Larry A. Gause and Karlepa Wilkey were convicted of armed robbery of a senior citizen and of several related weapons offenses. In their appeal, appellants contended that the trial judge erred by denying Gause's pretrial request (joined by Wilkey) for discovery, pursuant to the DCJSA, relating to jury selection records. As described more fully in Gause v. United States, 959 A.2d 671, 675–76 (D.C.2008) (Gause I ), appellants' motion, which included substantial, albeit preliminary, expert analysis, alleged that the Superior Court system for selecting juries "produces jury venires that do not reflect a fair cross-section of the community and systematically excludes African Americans."[2]

---

1. See D.C.Code § 11–1901 to 1918 (2001).

2. In a footnote, our dissenting colleagues mention the racial composition of appellants'

The trial judge denied Gause's motion (the "Jury Motion"), including Gause's request for discovery,[3] based upon his finding that Gause had failed to establish a *prima facie* case that the Superior Court's system for the selection of jurors violates the Fifth and Sixth Amendments to the United States Constitution and the DCJSA.

A division of this court reversed the trial court, with one judge dissenting. *See Gause I, supra,* 959 A.2d at 688. Rejecting the *"prima facie* case" standard imposed by the trial court, the *Gause I* majority instead fashioned a "reasonable belief" standard whereby a litigant's access to nonpublic jury information would be conditioned upon making "a particularized showing supporting a reasonable belief that underrepresentation in the jury pool or the venire exists as the result of practices of systematic exclusion." *Id.* at 684–85, 687 (adopting standard of *People v. Jackson,* 13 Cal.4th 1164, 56 Cal. Rptr.2d 49, 920 P.2d 1254, 1268 (1996)). Appellants thereafter filed a petition for rehearing en banc. We granted the petition and vacated the prior decision of the court. *See* 968 A.2d at 1032.

## II. Analysis

### A.

■ Whether the DCJSA imposes a threshold showing requirement presents a matter of statutory construction, which involves a "clear question of law" that we review *de novo. District of Columbia v. Morrissey,* 668 A.2d 792, 796 (D.C.1995).

From 1968 until 1986, the jury selection system in the District of Columbia was governed by the FJSSA. Then, in 1986, Congress enacted the DCJSA "to provide for the establishment of an independent jury system for the District of Columbia Superior Court...." S.REP. No. 99–473, at 1 (1986). While there are some obvious differences in the statutes, there are also some key similarities. In drafting the DCJSA, for example, Congress adopted the FJSSA's "Declaration of policy" nearly verbatim, including the specific guarantee that "all litigants entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross section" of the community. *Compare* 28 U.S.C. § 1861 *with* D.C.Code § 11–1901. Additionally, many provisions in the

petit jury. As explained more fully in the dissenting opinion to *Gause I, supra,* 959 A.2d at 691–93 (Blackburne–Rigsby, J., dissenting), the panel majority wrongly conflated the Black and Latino jurors on Gause's panel as "Black jurors" in determining that Gause's jury was majority Black and that Black representation on the jury was slightly greater than the percentage of the District of Columbia's population. However, the 2000 Census differentiated between those identifying as "Black alone" and those identifying as "Latino of any race." *Id.* at 692. Therefore, using the Census' metrics, Gause's jury was actually only 50% Black and thus underrepresented the District of Columbia's Black population. *Id.* at 691–92. We therefore question whether the percentage figures presented by the panel majority were accurate; and even if they were, this apparent post-hoc rationalization is not relevant to the legal issue presented

here—whether the DCJSA imposes a threshold showing requirement.

3. Specifically, Gause asked the trial judge to order the Clerk of the Superior Court to provide to his counsel, for the preceding five years, or for whatever shorter period as to which the requested materials were available, (a) "all documents and computer tapes" relating to the master jury wheel, (b) "all documents and computer tapes" containing personal information about all persons summoned for jury service, and (c) "all documents relating to the development of the current jury system and plan." Gause also requested the court to order the Clerk to make available for interview by his counsel "all jury office officials and staff and the staff of any agency designated by the Jury Plan to provide names to the jury office for inclusion in the master jury wheel."

DCJSA closely follow corresponding provisions in the FJSSA. Both statutes, for example, mandate a jury selection process that is free from unlawful discrimination. In a section entitled "Discrimination prohibited," the FJSSA states that "[n]o citizen shall be excluded from service as a grand or petit juror . . . on account of race, color, religion, sex, national origin, or economic status." 28 U.S.C. § 1862 (1980). The DCJSA has a similar section entitled "Prohibition of discrimination," which provides that "[a] citizen of the District of Columbia may not be excluded or disqualified from jury service as a grand or petit juror in the District of Columbia on account of race, color, religion, sex, national origin, ancestry, economic status, marital status, age, or (except as provided in this chapter) physical handicap." D.C.Code § 11–1903. Both statutes also require the adoption and implementation of a jury system plan for the random selection of jurors.[4] *Compare* 28 U.S.C. § 1863(a) (1992) *with* D.C.Code § 11–1904(a).[5] And, as will be apparent, both statutes include provisions for litigants who wish to challenge the composition of juries and jury venires for violation of the statute's fair cross section requirement.[6]

Importantly, and of particular relevance here, both the FJSSA and the DCJSA expressly contemplate that litigants who wish to challenge the jury selection process will have access to nonpublic records even before any written motion is filed. The FJSSA, under the heading of "Challenging compliance with selection procedures," states that in criminal cases, within specified time limits, "the defendant may move to dismiss the indictment or stay the proceedings against him on the ground of substantial failure to comply with the provisions of this title in selecting the grand or petit jury." 28 U.S.C. § 1867(a). It further provides that upon the filing of such a motion:

> the moving party shall be entitled to present in support of such motion the testimony of the jury commission[er] or

4. The District of Columbia's Jury System Plan provides for the random selection and service of grand and petit jurors in the Superior Court. D.C.Code § 11–1904. The Plan provides that a master juror list is to be compiled from lists of District of Columbia voters, and names from other appropriate sources identified in the Plan. D.C.Code § 11–1905. The Plan also provides procedures for the random selection and qualification of grand and petit jurors from the master juror list, which contains, *inter alia*, name, age, and occupation information. D.C.Code § 11–1906. *See, e.g., Maxwell v. United States*, 297 A.2d 771, 774 (D.C.1972) (noting that master jury list contained, *inter alia*, names, ages, and occupations). A qualification form is mailed to these prospective jurors who must meet certain criteria in order to be qualified to serve. D.C.Code § 11–1906. This form also contains information on a prospective juror's race. Qualified jurors are then entered into a master jury wheel, which forms the basis for the random selection of venires for grand and petit juries. D.C.Code § 11–1904.

5. The FJSSA mandates that "[e]ach United States district court shall devise and place into operation a written plan for random selection of grand and petit jurors that shall be designed to achieve the objectives of sections 1861 ["Declaration of policy"] and 1862 ["Discrimination prohibited"] of this title." 28 U.S.C. § 1863(a). The DCJSA similarly requires that the "Board of Judges shall adopt, implement, and as necessary modify, a written jury system plan for the random selection and service of grand and petit jurors in the Superior Court consistent with the provisions of this chapter." D.C.Code § 11–1904(a).

6. Jury challenges may also be brought pursuant to the Sixth Amendment and/or the Fifth Amendment. And several state legislatures have enacted statutes similar to the DCJSA as well. *See, e.g., Lewis v. State*, 332 Md. 639, 632 A.2d 1175, 1176–77 (1993); *Forum Commc'ns Co. v. Paulson*, 752 N.W.2d 177, 183 (N.D.2008); *Gannett Co. v. State*, 571 A.2d 735, 746–47 (Del.1990).

clerk, if available, any relevant records and papers not public or otherwise available used by the jury commissioner or clerk, and any other relevant evidence. 28 U.S.C. § 1867(d). The corresponding provision in the DCJSA, under the same heading of "Challenging compliance with selection procedures," provides:

A party may challenge the composition of a jury by a motion for appropriate relief. A challenge shall be brought and decided before any individual juror is examined, unless the Court orders otherwise. The motion shall be in writing, supported by affidavit, and shall specify the facts constituting the grounds for the challenge. If the Court so determines, the motion may be decided on the basis of the affidavits filed with the challenge. If the Court orders trial of the challenge, witnesses may be examined on oath by the Court and may be so examined by either party.

D.C.Code § 11–1910(a).

The FJSSA also includes a provision—still under the same heading, "Challenging compliance with selection procedures"—that relates to a litigant's ability to seek discovery: "The parties in a case shall be allowed to inspect, reproduce, and copy such records or papers at all reasonable times during the preparation and pendency of such a motion." 28 U.S.C. § 1867(f). There is no identical sentence

in the DCJSA,[7] but the DCJSA does provide, in D.C.Code § 11–1914(b), that "[t]he contents of any records or lists used in connection with the selection process shall not be disclosed, *except in connection with the preparation or presentation of a motion under § 11–1910,* or until all individuals selected to serve as grand or petit jurors from such lists have been discharged." (emphasis added).

As noted above, the Supreme Court has had occasion to interpret the FJSSA, and the Court concluded that the DCJSA's federal predecessor confers "essentially an unqualified right to inspect jury lists." *Test, supra,* 420 U.S. at 30, 95 S.Ct. 749. The Court reasoned that the "unqualified right to inspection is required not only by the plain text of the statute, but also by the statute's overall purpose of insuring 'grand and petit juries selected at random from a fair cross section of the community.'" *Id.* (quoting 28 U.S.C. § 1861).[8] The Court explained that the FJSSA's statutory provisions guarantee "access in order to aid parties in the 'preparation' of motions challenging jury-selection procedures" because "without inspection, a party almost invariably would be unable to determine whether he has a potentially meritorious jury challenge." *Id.* at 30, 95 S.Ct. 749. Indeed, the Court was careful to further note that litigants' "unqualified right to inspection" was critical to effectuating the purpose of the FJSSA. *Id.*

---

**7.** Our dissenting colleagues' characterization of this "presumptively purposeful omission" might lead one to assume that the FJSSA and the DCJSA are mirror images of each other but for the "shall be allowed to inspect" sentence in 28 U.S.C. § 1867(f) and the "shall be entitled to present" language in 28 U.S.C. § 1867(d). However, the DCJSA was drafted almost twenty years after the FJSSA and there are significant differences in both the language and organization of the two statutes. *Compare, e.g.,* 28 U.S.C. § 1867(a)-(c) (outlining, in three separate subsections, time limits for bringing a challenge, depending upon

whether the case is criminal or civil) *with* D.C.Code 11–1910(a) (establishing, in one subsection, time limits for bringing a challenge in any type of case).

**8.** When drafting the DCJSA, Congress adopted (nearly verbatim) the FJSSA's "Declaration of policy," which, as the Supreme Court reasoned in *Test,* confers an independent basis for the "unqualified right to inspection" in the FJSSA. *Test, supra,* 420 U.S. at 30, 95 S.Ct. 749.

Like its federal predecessor, the DCJSA contemplates that litigants who wish to challenge the jury selection process will have access to nonpublic information for the "preparation and presentation" of such challenges. Specifically, while D.C.Code § 11–1914(b) announces a general rule of non-disclosure of records related to the jury selection process, it also contains a key exception to permit disclosure "in connection with the preparation or presentation of a motion under § 11–1910." Importantly, this exception is unqualified, save for the relevance requirement implicit in the words "in connection with." On its face, therefore, the DCJSA reveals no intent to further condition the right of inspection upon a litigant's possession and proffer of facts independently tending to show improper jury selection—facts that "almost invariably" would be unavailable to one considering a "*potentially* meritorious jury challenge." *Test, supra,* 420 U.S. at 30, 95 S.Ct. 749 (emphasis added). Given the unqualified right to inspect afforded by the DCJSA's federal predecessor, the equally unqualified exception declared by D.C.Code § 11–1914(b) bespeaks an intent of Congress to exclude any other predicate showing of relevance or justification for the inspection that the statute clearly contemplates. Indeed, there is no plain reading of the statute to support the threshold showing requirement that our dissenting colleagues would require, particularly where, as in this case, no legislative history has been cited to us suggesting that Congress meant to narrow in any way the inspection right that formerly existed in the District under the FJSSA.

**B.**

◼ Based upon our analysis of the language of the DCJSA—and, to some degree, the corresponding federal statute as construed by the Supreme Court—we concluded in Section II.A. that nothing in the language of the DCJSA requires litigants to demonstrate a threshold showing of need or justification before they may inspect certain nonpublic records that are relevant for the "preparation or presentation of a motion" alleging "substantial failure to comply with" the DCJSA. But we must also consider a circumstance that loomed significant for the division majority and our dissenting colleagues, which is the absence in the DCJSA of a particular sentence in the federal statute affirmatively stating that parties in a case "shall be allowed to inspect, reproduce, and copy such records or papers [relevant to a motion] at all reasonable times during the preparation and pendency of such a motion." 28 U.S.C. § 1867(f).

Neither party, nor our own research, has unearthed any legislative history explaining this omission from the local statute. Nevertheless, it has been argued that Congress' omission of this language from the DCJSA supports an inference that it intended judges to condition the right to discovery under the DCJSA upon a threshold showing of probativeness of a particular kind—i.e., that the movant has objective grounds from other sources to believe, or at least suspect, that the court records will yield affirmative evidence of a statutory or constitutional violation relevant to jury selection in the case at bar. In other words, it is argued that we should import into the DCJSA by inference such a threshold showing requirement to effectuate the "meaning" that, under certain canons of statutory construction, might be drawn from a legislature's omission of substantive language in a subsequent enactment of a statute. *See, e.g., United States v. Wilson,* 290 F.3d 347, 360 (D.C.Cir. 2002). But we are unpersuaded by our dissenting colleagues' reasoning, and their reliance on *Wilson* in particular. Importantly, while the *Wilson* court observed

generally that "[w]here the words of a later statute differ from those of a previous one on the same or related subject, the Congress must have intended them to have a different meaning," 290 F.3d at 360, it ultimately found that this canon *did not apply* in that case, in part because "Congress is unlikely to intend any radical departures from past practice without making a point of saying so." *Id.* (quoting *Jones v. United States,* 526 U.S. 227, 234, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999)). In this case, we decline to apply this general canon (just as the *Wilson* court did) because we cannot presume here that Congress intended to strip District residents of certain rights without at least "making a point of saying so." *Id.; cf. Owens v. District of Columbia,* 993 A.2d 1085, 1088–89 (D.C.2010) ("We have previously refused to assume, in the absence of specific textual support," that a statute "inten[ded] to cut back on [a] previously-existing ... statutory right") (internal quotation marks and citation omitted).

In our view, it is too great a leap to infer from the omission of this one sentence in D.C.Code § 11–1914 (corresponding to 28 U.S.C. § 1867(f)) that Congress meant by its silence to import into the DCJSA an otherwise unexplained qualification of the discovery right—a qualification or restriction on the discovery right that did not exist in the earlier statute on the same subject. Our dissenting colleagues conclude that such a leap is "the most reasonable inference" from the absence of this

sentence, but their analysis glosses over or ignores several important points. First, our dissenting colleagues offer no rationale for why Congress would reuse the FJSSA's "Declaration of policy" nearly verbatim in the DCJSA—especially after the Supreme Court interpreted such language to call for an unqualified right to inspection—if Congress truly intended this court to fashion a new threshold showing requirement based upon the "presumptively purposeful omission" of one particular sentence in 28 U.S.C. § 1867(f).[9]

Second, contrary to the dissent's assertion that "no provision comparable ... to [28 U.S.C.] § 1867 ... was included in the DCJSA," the language in D.C.Code § 11–1914(b) is, in fact, almost *identical* to the first sentence in 28 U.S.C. § 1867(f).[10] While the dissent concedes that "headings are not conclusive," it provides no reason for dismissing the obvious parallels between 28 U.S.C. § 1867(f) and D.C.Code § 11–1914(b). Moreover, by conceding that the latter "authorizes disclosure of otherwise non-public records," the dissent undermines its own reasoning that nothing in a section entitled "Preservation of records" might be relevant in determining whether Congress intended to strip District residents of rights that they enjoyed from 1968 until 1986.

Third, we cannot overlook, as the dissent does, the manner in which the FJSSA has worked in practice. Indeed, the dissent does not adequately explain why a federal

**9.** *See Test, supra,* 420 U.S. at 30, 95 S.Ct. 749. Without explanation, the dissent completely ignores that 28 U.S.C. § 1861 and D.C.Code § 11–1901 are almost identical.

**10.** *Compare* D.C.Code § 11–1914(b) ("The contents of any records or lists used in connection with the selection process shall not be disclosed, except in connection with the preparation or presentation of a motion under § 11–1910, or until all individuals selected to

serve as grand or petit jurors from such lists have been discharged.") *with* 28 U.S.C. § 1867(f) ("The contents of records or papers used ... in connection with the jury selection process shall not be disclosed, except pursuant to the district court plan or as may be necessary in the preparation or presentation of a motion under [this section], until ... all persons selected to serve as jurors ... have completed such service.").

statute and its District of Columbia successor statute—with virtually identical stated purposes—should not be interpreted consistently. This is particularly so given that this court has previously articulated that "[t]he government cannot rely on courts to rewrite imprecise enactments, and this is especially true where, as here, the [government] is asking us to accord a narrow and grudging construction to remedial legislation." *District of Columbia v. Tarlosky,* 675 A.2d 77, 80–81 (D.C.1996) (internal quotation marks omitted) (citing *Lanier v. District of Columbia,* 871 F.Supp. 20, 24 (D.D.C.1994)).

Furthermore, if the omission of this one sentence is thought to be so telling, so too must be the legislature's failure to include anything in the DCJSA defining (or even mentioning) this new threshold showing requirement that our dissenting colleagues would impose solely by implication. That point seems to us all the more persuasive considering the array of formulations that have been employed in reading such a qualification into the right to inspect juror records. The trial court in this case, for example, thought that a *prima facie* showing of a violation ought to be made before discovery would be available. And while the division majority thought this standard was too demanding, it settled upon a showing of "reasonable belief" analogous to that required in criminal law contexts, citing authorities that require (in yet another variation) a "particularized showing" of "a reasonable belief" that systematic exclusion resulted in underrepresentation in the jury pool. But the problem with any of these formulations is that D.C.Code § 11–1914(b) furnishes no basis for preferring one over the other. Indeed, the statute contains no other threshold standard of relevance or justification for the discovery of records than its terms establish: the disclosure sought must be "in connection with the preparation ... of a motion under § 11–1910." D.C.Code § 11–1914(b). Thus, like the Supreme Court in *Test,* we are unwilling to import into the statute a threshold showing requirement that movants would have to satisfy before obtaining access to materials "in connection with the preparation or presentation of a motion" challenging the jury selection process.[11] In our view, to impose a threshold requirement would undermine the recognized purpose of the DCJSA of ensuring that litigants have access to discovery for purposes of preparing a motion challenging the jury selection process, which thereby ensures that "grand and petit juries [are] selected at random from a fair

---

11. We also note that Superior Court judges may have had considerable difficulty applying the "reasonable belief" standard adopted by the division majority. The full passage from the California case upon which the division majority relied in fashioning the "reasonable belief" standard provides:

Rather, upon a particularized showing supporting a reasonable belief that underrepresentation in the jury pool or the venire exists as the result of practices of systematic exclusion, the court must make a reasonable effort to accommodate the defendant's relevant requests for information designed to verify the existence of such underrepresentation and document its nature and extent.

*Gause I, supra,* 959 A.2d at 685 (quoting *People v. Jackson,* 13 Cal.4th 1164, 56 Cal. Rptr.2d 49, 920 P.2d 1254, 1268 (1996)). In our view, this "reasonable belief" standard raises a whole host of questions but supplies very few answers. And, to add yet another layer of complexity, the division majority appeared to somehow qualify its endorsement of California's already confusingly vague standard. *See, e.g., id.* (describing the "reasonable belief" standard as one that *"appears* to be *roughly comparable* to the reasonable 'articulable suspicion' standard applied by the Supreme Court" in "stop and frisk" cases, and directing that "doubtful cases [should] be resolved in the defendant's favor ....") (emphasis added).

cross section of the community." *Test, supra,* 420 U.S. at 30, 95 S.Ct. 749.

The imposition of a threshold requirement—even one that our dissenting colleagues describe as "very modest"—contravenes the very purpose of the DCJSA by forcing a litigant to put the proverbial cart before the horse. In other words, a threshold requirement places the burden on the litigant to prove—or prove to a lesser degree—the merits of his or her constitutional claims in order to garner access to the nonpublic and confidential information necessary to prove the merits of his or her claim. *See Gause I, supra,* 959 A.2d at 691 (Blackburne–Rigsby, J., dissenting). In light of how important statistics are in proving discrimination claims under the Fifth and Sixth Amendments, the practical implication of even the "very modest" threshold showing requirement that our dissenting colleagues would impose is inconsistent with the reality that "without inspection, a party almost invariably would be unable to determine whether he has a potentially meritorious jury challenge." *Test, supra,* 420 U.S. at 30, 95 S.Ct. 749.

## C.

■ At the same time, nothing we have said so far implies that the trial court is without discretion—indeed, important discretion—in entertaining a motion for discovery under D.C.Code § 11–1914(b). It scarcely needs saying that the judge is not obliged to grant a motion that on its face, or as signaled clearly by the circumstances, is made solely to delay the trial. The DCJSA certainly does not authorize litigants to file motions in bad faith; indeed, movants should always remember that the Superior Court has the inherent authority to punish those who intentionally abuse the litigation process. *See, e.g., In re Jumper,* 909 A.2d 173, 176 (D.C.2006). On the other hand, because the DCJSA imposes no threshold showing requirement, it is important to emphasize that the movant need not articulate a specific theory at the outset about how the requested materials might ultimately demonstrate a "substantial failure to comply with [the DCJSA]." D.C.Code § 11–1910(b).[12]

Significantly, courts construing the equivalent federal provision have consistently held that trial judges retain important discretion to. limit the breadth of disclosure and pace the timing of disclosure of juror-related records.[13] And that is as it should be. The statute requires disclosure of only those records that are relevant for "the preparation or presentation of a motion" alleging a "substantial failure to comply with [the DCJSA]." D.C.Code §§ 11–1910(b), –1914(b). Obviously, not

---

**12.** *See, e.g., Test, supra,* 420 U.S. at 30, 95 S.Ct. 749 (recognizing that without discovery, "a party almost invariably would be unable to determine whether he has a potentially meritorious jury challenge."); *United States v. Royal,* 100 F.3d 1019, 1025 (1st Cir.1996) ("[A] litigant need only allege that he is preparing a motion to challenge the jury selection process.").

**13.** *See, e.g., United States v. Davenport,* 824 F.2d 1511, 1514–15 (7th Cir.1987) (holding that defendant had "unqualified right" to the jury list, but not the jury qualification questionnaires without some demonstration of necessity); *United States v. McLernon,* 746 F.2d

1098, 1122–23 (6th Cir.1984) (holding that defendants' right to discovery was satisfied by inspection of master lists and the relevant demographic data about the general pool from which the grand jurors were selected, and thus defendants were not entitled to the names, addresses, and demographics of the individual grand jurors who returned indictments against them); *United States v. Shapiro,* 994 F.Supp. 146, 148 (E.D.N.Y.1998) (finding that transmission of juror information to defendant's attorney, and not defendant himself, satisfied defendant's unqualified right to inspect jury lists).

all juror-related records in the court's possession will bear on that issue. To the extent that the non-relevant information cannot reasonably be segregated from the data to which litigants are entitled under the DCJSA, the trial court will have to exercise its discretion in deciding how best to protect it (e.g., protective order, attorneys' eyes-only restrictions, etc.).

In this case, for example, even before appellants inspected any nonpublic records, their Jury Motion set forth their preliminary theory about how the requested materials would ultimately support a "substantial failure to comply with" the DCJSA. However, as noted above, movants need not articulate such a theory as a prerequisite before exercising their inspection rights under the DCJSA. But should the movant elect to make such a proffer (whether before any inspection, as here, or as part of a status conference in between rounds of inspection), their submission might help the trial court make more informed decisions about what information is or is not relevant. In that regard, it is important to note that nothing in the DCJSA precludes the trial judge from ordering disclosure of records incrementally in determining what information, which is otherwise confidential, might be relevant for "the preparation or presentation of a motion" alleging a "substantial failure to comply with" the DCJSA.[14] D.C.Code §§ 11–1910(b), –1914(b).

## III.  Conclusion

■■■■  In sum, we conclude that under the DCJSA, a litigant preparing a possible motion challenging the jury selection process may inspect certain materials that are used "in connection with the [jury] selection process" without a threshold showing that there is reason to believe such discovery will ultimately substantiate a statutory or constitutional violation. The only qualification is that the litigant's request must be "in connection with the preparation or presentation" of such a motion. D.C.Code § 11–1914(b). At the same time, the trial court retains important discretion to manage DCJSA discovery in a reasonable manner. Specifically, Superior Court judges have considerable flexibility to determine the scope and timing of the disclosure in each particular case, and what safeguards, if any, may accompany it. And while some cases may require more circumspection than others, the trial court must always be careful that it is not undermining the purpose of the statute by requiring proof of a "substantial failure to comply with" the DCJSA even before litigants have an opportunity to inspect the records that might ultimately support such a finding.[15]

We respectfully disagree with the dissent's conclusion that this court must impose a threshold showing requirement to effectuate Congress' intent (which, again, the dissent gleans primarily from the "presumptively purposeful omission" of a single

---

14.  In fact, several federal courts dealing with analogous requests under the FJSSA have used such an approach. *See, e.g., United States v. Diaz,* 236 F.R.D. 470, 483–84 (N.D.Cal.2006) (allowing access to information explaining how computerized jury selection program functions, but denying access to original source list of juror information); *United States v. Carlock,* 606 F.Supp. 491, 493–94 (W.D.La.1985) (allowing access to "the records and materials used in selection of the master jury wheel and qualified jury

wheel," including the completed juror qualification forms, but deferring movant's request for information regarding the potential jurors for his case until after the jury was empaneled).

15.  *Cf. Test, supra,* 420 U.S. at 30, 95 S.Ct. 749 (noting that without discovery, "a party almost invariably would be unable to determine whether he has a potentially meritorious jury challenge.").

sentence). In our view, the dissent reads too much into the absence of a few words; it would erect a new threshold showing requirement without any supportive legislative history, and in the face of the DCJSA's and FJSSA's nearly identical stated purposes. We, on the other hand, like the Supreme Court in *Test*, are unwilling to import into the statute a threshold showing requirement, which in our view would serve only to impose an unnecessary hurdle for litigants in contravention of the stated purpose of the DCJSA.

Here, we must remand for further proceedings because the trial court erred in requiring appellants to present a *prima facie* showing before they could inspect any relevant records. We leave it to the trial court to exercise its discretion to consider and decide, based on the reasoning outlined above, the proper scope of discovery and what limitations, if any, are appropriate for the particular circumstances of this case. If either appellant thereafter files a motion pursuant to D.C.Code § 11–

1910 challenging the jury selection procedures (those that were in effect at the time of their trial), the court shall hear and decide the matter.[16] If the court determines that "there has been a substantial failure to comply" with the DCJSA, D.C.Code § 11–1910(b), it shall grant a motion for a new trial. In other words, while appellants have a statutory right to certain discovery under the DCJSA, unless and until a violation is found by the trial court, we see no need to disturb their convictions.[17] *Cf. United States v. Beaty*, 465 F.2d 1376, 1382 (9th Cir.1972).

*So ordered.*[18]

SCHWELB, Senior Judge, with whom WASHINGTON, Chief Judge, and KRAMER and THOMPSON, Associate Judges, join, dissenting:

The judges who join in this dissenting opinion adhere to[1] or generally agree with[2] the opinion of the division majority in *Gause v. United States*, 959 A.2d 671 (D.C.2008) (*Gause I*).[3] We therefore re-

---

16. The DCJSA specifies that motions challenging the jury-selection process "shall be brought and decided before any individual juror is examined, *unless the Court orders otherwise.*" D.C.Code § 11–1910(a) (emphasis added).

17. For the reasons stated in *Gause I, supra*— which we subsequently vacated *in toto, see* 968 A.2d 1032—we hereby reaffirm and adopt the panel's conclusions about Wilkey's other contentions. 959 A.2d at 688 n. 17.

18. We note that our colleagues in the minority have prepared a strongly-worded dissent. From our perspective, our contrasting positions in this case derive from one critical difference in opinion. We determine that depriving District of Columbia litigants of an "unqualified right" that they have enjoyed for over forty years, without specific congressional direction to that effect, constitutes a "radical departure from past practice" that, pursuant to *Jones*, 526 U.S. at 234, 119 S.Ct. 1215, and *Wilson*, 290 F.3d at 360, precludes this

court from following the canon of statutory interpretation that our dissenting colleagues would have us follow. Our colleagues in the minority disagree.

1. Judges Thompson and Schwelb.

2. Chief Judge Washington and Judge Kramer.

3. In order to place the discussion that follows in context, the reader should be apprised that the evidence of the defendants' guilt was overwhelming; that the fourteen jurors and alternates included seven blacks and one black Latina; that, in raising their jury selection challenge, defendants cited a report about statistically significant underrepresentation of blacks in Monday jury venires and a report attributing that result to the impact of the jury office's practice of rescheduling to Mondays individuals who responded to jury summonses by requesting that their one-day-or-one-trial jury service be deferred; and that defendants' jury was not selected on a Monday, but on a Tuesday. *Id.* at 675–77.

spectfully dissent from the decision of the en banc court.

## I.

The issue which divides the court is whether Gause and Wilkey are required to make a very modest threshold showing, *i.e.*, reasonable belief or suspicion that a violation of the DCJSA may have occurred, before being granted discovery of, and access to, confidential records and documents to which the general public has no access, and before being authorized to take the depositions of court officials. All of the members of the court appear to agree that the proper resolution of that issue turns on the similarities and dissimilarities between the FJSSA and the DCJSA. The FJSSA applied to the Superior Court, as well as to the United States District Courts, until the enactment in 1986 of the DCJSA, which now governs local prosecutions.

The principal and, in our view, dispositive difference between the two statutes is that the FJSSA contains two provisions which explicitly accord a criminal defendant or other litigant who is preparing to file a motion to challenge the composition of the jury pool the right to discover, and to present in support of the motion, otherwise confidential or non-public information relating to jury selection. Specifically, the provision of the FJSSA dealing with discovery states that "[t]he parties in a case shall be allowed to inspect, reproduce and copy such records or papers at all reasonable times during the preparation and pendency of such a motion." 28 U.S.C. § 1867(f). The FJSSA also provides that where such a motion has been filed (together with a supporting sworn statement),

> the moving party shall be entitled to present in support of such motion the testimony of the jury commission[er] or clerk, if available, any relevant records and papers not public or otherwise available used by the jury commissioner or clerk, and any other relevant evidence.

28 U.S.C. § 1867(d). In other words, § 1867(f) provides without qualification for the inspection and copying, by a party seeking to challenge selection procedures relating to the jury pool, of relevant but otherwise confidential records and documents, and § 1867(d) accords that party the right to present, in support of his or her challenge, "any relevant records and papers not public or otherwise available." Thus, in prosecutions in the United States District Courts, the "shall be allowed to inspect" language in § 1867(f) and the "shall be entitled to present" language in § 1867(d) establish the unqualified right of parties proposing to make such a jury selection challenge, but not of other members of the public, to have access to and use of confidential jury records not otherwise subject to public scrutiny.

In *Test v. United States*, 420 U.S. 28, 30, 95 S.Ct. 749, 42 L.Ed.2d 786 (1975) (per curiam), the Supreme Court held unequivocally that such an unqualified right exists under the FJSSA. But notwithstanding similarities between other parts of the FJSSA and the DCJSA,[4] no provision comparable either to § 1867(f) or to the rele-

---

4. Interestingly, the majority criticizes the dissent both for allegedly exaggerating the similarities between the two statutes, maj. op. at note 7 (dissent "might lead one to assume that the FJSSA and the DCJSA are mirror images of each other but for the 'shall be allowed to inspect' ... and the 'shall be entitled to present'" language) and, conversely, for a supposed failure to accord sufficient recognition and significance to the similarities between the two. ("dissent does not adequately explain why a federal statute and [the DCJSA]—with virtually identical stated purposes—should not be interpreted consistently").

vant portion of § 1867(d) was included in the DCJSA which, as we have noted, supplanted the earlier-enacted FJSSA as the statute governing jury selection in the Superior Court.

As the division majority explained in *Gause I*, 959 A.2d at 682–83, citing ample authority, a change in the language of a predecessor statute creates a strong presumption that the legislature intended a change in result. "If words used in a prior statute to express a certain meaning are omitted, it will be presumed that a change of meaning was intended." *Id.* at 682 (quoting *Chertkof v. United States*, 676 F.2d 984, 988 (4th Cir.1982)) (quoting 2A C. DALLAS SANDS, SUTHERLAND STATUTORY CONSTRUCTION § 51.02 (1973)); *United States v. Brown*, 422 A.2d 1281, 1284 (D.C. 1980). "Where the words of a later statute differ from those of a previous one on the same or [a] related subject, the Congress must have intended them to have a different meaning." *Muscogee (Creek) Nation v. Hodel*, 271 U.S.App.D.C. 212, 217, 851 F.2d 1439, 1444 (1988), *cert. denied*, 488 U.S. 1010, 109 S.Ct. 795, 102 L.Ed.2d 786 (1989) (citing *Klein v. Republic Steel Corp.*, 435 F.2d 762, 765–66 (3d Cir.1970)); *see also United States v. Wilson*, 351 U.S.App.D.C. 261, 274, 290 F.3d 347, 360,

*cert. denied*, 537 U.S. 1028, 123 S.Ct. 581, 154 L.Ed.2d 442 (2002) (quoting *Muscogee Creek Nation* ).[5]

In this case, the provisions that were omitted from the DCJSA contain the very language of the FJSSA—"shall be allowed to inspect" in 28 U.S.C. § 1867(f) and "shall be entitled to present" § 1867(d)— that unambiguously grants to criminal defendants and other litigants in the federal courts, and formerly granted to litigants in the Superior Court, the right to the relief that Gause and Wilkey seek here, namely, unconditional access in discovery, without any threshold showing, to otherwise confidential records and documents, and the use of such non-public materials in support of a motion challenging the selection of the jury pool. Thus, in *Test*, 420 U.S. at 30, 95 S.Ct. 749, the Supreme Court stated that an unqualified right to inspection is required, *inter alia*, "by the plain text of the [federal] statute."[6] The District's statute, however, does not include this dispositive "plain text." Thus, in the FJSSA Congress explicitly authorized discovery and disclosure of otherwise confidential information, with no prior threshold showing being required. In the DCJSA, by contrast, Congress did not.

---

**5.** To be sure, "Congress is unlikely to intend any radical departures from past practice without making a point of saying so." *Jones v. United States*, 526 U.S. 227, 234, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999); *Wilson*, 351 U.S.App.D.C. at 274, 290 F.3d at 360 (quoting *Jones* ). But in *Jones*, the proposed reading of the statute would have contravened the familiar rule that "where a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, this Court's duty is to adopt the latter." 526 U.S. at 239, 119 S.Ct. 1215. In *Wilson*, the construction of the new statute urged upon the court would, for no discernible reason, have changed "the established practice for appointing members of the Commission on Civil Rights." 351 U.S.App.D.C. at 274,

290 F.3d at 360. These would have been truly unexplained "radical departures." By contrast, in the context of the entire statute, the modest alteration in the DCJSA of the FJSSA's discovery provisions cannot fairly be so characterized.

**6.** The Court in *Test* further stated that the result reached was also required by "the statute's overall purpose of insuring grand and petit juries selected at random from a fair cross-section of the community." *Id.* at 30, 95 S.Ct. 749 (citation and internal quotation marks omitted). The significance of this language, for purposes of this case, is discussed in detail in *Gause I*, 959 A.2d at 683–84, and we adopt that discussion without repeating it.

Our colleagues in the en banc majority do not really come to grips with the "change in meaning" canon of construction on which the division relied in *Gause I* and on which we rely here, nor do they explain why the sensible principles underlying that canon should not apply in this case. One searches the majority opinion in vain for citation of any authority rejecting this familiar aid to construction or limiting its applicability in any way that is relevant here. According to the majority, the division's application to this record of the proposition that changes in statutory language indicate a change in the meaning of the statute "is too great a leap." The opinion does not tell us, however, why the division's supposed "leap"—actually, the application of a long-standing and uncontroversial canon of statutory construction, consistent with the dictates of common sense—was less persuasive than the reasoning of the various courts in any of the numerous cases in which that canon has been routinely applied.[7]

We are all entitled to our own opinions, but not to our own facts. The critical *fact* here is that the language in two separate subsections, which explicitly created the unqualified right under the FJSSA to access to non-public records, and which applied to the District prior to the enactment of the DCJSA, was omitted from the statute which *now* governs jury selection procedures in the Superior Court. These omissions must have been either intentional or accidental. If the changes were made intentionally, then it cannot be plausibly argued, insofar as the unqualified right of inspection of non-public records is concerned, that the two statutes—one containing dispositive language and one from which that language was deliberately omitted—were intended to mean the same thing and to achieve the same result. Congress cannot be supposed to have believed that it could ensure the reaffirmance of a desired outcome by deliberately leaving out the very language that unambiguously required that result. To put it more directly, if you want a rule to remain the same, you do not tinker with the provisions that state that rule, and you most assuredly do not eliminate those provisions.

The majority notes that there is no pertinent legislative history and perhaps (we are not sure) implies, without expressly saying so, that the omission of the key language in the FJSSA was inadvertent and that Congress must have made a mistake. But surely this court may not simply assume that provisions which, had they been retained, would have left no doubt as to the proper disposition of the issue before us, were left out of the DCJSA by accident, and that nobody involved in drafting the DCJSA noticed the omissions before the Act became law. Legislators are human, and perfection being a rare commodity, the legislative process is not

---

**7.** According to the majority, the "change in meaning" canon of construction should not be invoked here because there is a substantive difference between the threshold showing imposed by the trial judge and the less demanding one articulated by the division. Specifically, the trial judge (who did not discuss the canon at all) required a showing of a *prima facie* case, while the division, following rulings by the highest courts of California and Florida, held that a reasonable suspicion standard was appropriate.

With due respect, the majority's argument is based on a complete *non-sequitur*. A difference of opinion between the division and the trial judge, in articulating the specific threshold showing that a moving defendant should be required to make, has nothing whatever to do with the question of statutory construction before us, namely, whether the omission from the DCJSA of the "shall be allowed to inspect" language in § 1867(f) and of the "shall be entitled to present" language in § 1867(d) discloses an intent on the part of Congress to depart from the federal statute's standard.

perfect. Nevertheless, absent some compelling evidence to the contrary, we should take it for granted that the drafters of the DCJSA read the statute before it was enacted, and that the elimination of FJSSA provisions granting criminal defendants and other parties, during the preparation or pendency of a motion pursuant to 28 U.S.C. § 1867, unqualified access to non-public records, without having to make any threshold showing, was intentional rather than inadvertent. There is therefore only one reasonable conclusion, namely, that the failure to include in the DCJSA the dispositive "shall be allowed to inspect" language of § 1867(f) and the "shall be entitled to present" language of § 1867(d), was deliberate, and that Congress did not intend to carry over to the new statute the very rule that would have remained in effect if that language had not been left out.

## II.

But, insists the en banc majority, even in the absence of the key FJSSA provisions which Congress omitted from the DCJSA, a party who has filed a motion challenging the composition of the jury pool has an unqualified right of access to non-public records on the basis of what the majority insists is the "language"—presumably, the plain language[8]—of the DCJSA. The majority cites D.C.Code § 11–1914(b), which, it says, "bespeaks an intent of Congress to exclude any other predicate showing of relevance or justification for the inspection that the statute clearly contemplates." We do not agree.

At least in our view, the notion that the result reached by the en banc majority is supported by the language of the statute, let alone a "plain reading" of that language, is altogether untenable. This is so because Congress *omitted* from the DCJSA the very provisions of the FJSSA that explicitly created, for parties seeking to challenge the composition of the jury pool, the unqualified right to inspection and use of otherwise non-public material to which Gause and Wilkey claim to be unconditionally entitled notwithstanding these omissions. If two consistent provisions unambiguously directing a particular result are left out of or stricken from a statute, the legislature is not "plainly" (or at all) indicating that it wishes to adhere to the prior result. On the contrary, the opposite is true.

A simple hypothetical illustrates our point. If our Constitution were amended to retain most of the provisions of the Bill of Rights, but to leave out the Second Amendment, it would surely be difficult to argue that the right to bear arms continues to receive constitutional protection under some other Amendment. The same is true here. The majority's approach suggests that notwithstanding the presumptively purposeful omission of the "shall be allowed to inspect" language of § 1867(f) and the "shall be entitled to present" language of § 1867(d) from the later-enacted DCJSA, the spirit of the omitted provisions is so unquenchable that it not only survives their elimination by Congress, but that it also remains in effect—and remains in effect unambiguously—in a new statute in which the key provisions of § 1867(f) and § 1867(d) could so readily have been included, but from which Congress excluded them instead. A chain is only as strong as its weakest link, and we suggest that this link in the en banc majority's chain is less than sturdy.

Section 11–1914(b) of the DCJSA, on

---

**8.** The majority eschews the explicit use of the phrase "plain language," but it says that there

is no "plain reading" of the statute other than its own.

which the majority relies,[9] provides that [t]he contents of any records or lists used in connection with the selection process shall not be disclosed, except in connection with the preparation or presentation of a motion under § 11–1910, or until all individuals selected to serve as grand or petit jurors from such list have been discharged.

As the division explained in *Gause I*, 959 A.2d at 685 n. 10,

This provision authorizes disclosure of otherwise non-public records, but it does not purport to prescribe a standard governing such disclosure, nor does it state or even suggest that no [threshold] showing need be made. Indeed, in our view, the very title of the provision is inconsistent with the meaning that our [dissenting] colleague seeks to attribute to it.

The disagreement between the en banc majority and the dissenters appears to turn on whether it is the "shall be allowed to inspect" language § 1867(f) and of the "shall be entitled to present" language of § 1867(d), both of which phrases were

omitted from the DCJSA, or the language of D.C.Code § 11–1914(b), which is in the District's statute, that illuminates the intent of Congress regarding whether a party must make any threshold showing in order to secure discovery of and access to otherwise confidential records and documents. On its face, § 11–1914(b) appears to have nothing at all to do with the subject of this disagreement. It provides that non-public records may be disclosed "in connection with the preparation of a motion under § 11–1910," but it gives us no clue as to what, if any, threshold showing is required.[10] Compared with §§ 1867(f) and (d), which deal with the issue explicitly and unambiguously and provide for unconditional access and use, § 11–1914(b) has to be stretched well beyond its language if it is to be viewed as negating the requirement of any threshold showing.

Perhaps it could plausibly be argued that § 11–1914(b) is ambiguous as to the requirement (or lack thereof) of a threshold showing, and that (but for the omission from the DCJSA of the language of the FJSSA), one reasonable reading of § 11–

---

**9.** The title of § 11–1914 is "Preservation of Records"—language which does not immediately bring to mind "threshold showing" issues. By way of contrast, § 1867(f) and § 1867(d) are contained in a provision of the FJSSA entitled "Challenging compliance with selection procedures." The question whether a threshold showing is required fits more logically into a provision about "challenging compliance" than it does into a section dealing with "preservation of records." While such headings are not conclusive, they do provide some indication regarding what a particular provision is about.

In footnote 10 of its opinion and the related text, the court points out that § 11–1914(b) (DCJSA) and § 1867(f) (FJSSA) both contain general prohibitions against disclosure of confidential jury information and that each provision contemplates an exception in relation to motions challenging the composition of the jury list. These non-substantive similarities,

however, simply emphasize the critical and dispositive differences, namely that the FJSSA expressly creates an unqualified right to inspect and present, while the DCJSA does not.

**10.** In asserting that in the foregoing sentence, "the dissent undermines its own reasoning that nothing in a section entitled 'preservation of records' could be relevant [to the issue at hand]," the majority constructs a straw man and proceeds to knock the unfortunate fellow down. As we have noted in footnote 9, *supra*, a provision governing the requirement *vel non* of a threshold requirement fits more logically under a heading relating to challenges to selection procedures than it does under the title "Preservation of Records." This does not mean that the "Preservation of Records" provision cannot recognize that an exception exists, but still leave it to other provisions of the statute, or where necessary to the court, to define the extent of that exception and the showing that must be made.

1914(b) would be that it means what the majority says it means. But the majority asserts that under a literal reading of § 11–1914(b), no threshold showing at all is required in order for parties to be entitled to inspect and present otherwise confidential records to which other citizens are denied access. That claim is pressed by the majority even though (1) on its face § 11–1914 does not say anything at all regarding what, if any, showing must be made; (2) other jurisdictions require a threshold showing;[11] and (3) the provisions of the federal statute entitling parties to unqualified access were left out of the otherwise similar DCJSA. To recognize that Congress must have had legitimate reasons, *e.g.*, the protection of juror privacy, for making these records and documents unavailable to the general public is to state the obvious. In the absence of an explicit overruling or abandonment by Congress of such considerations, it is unreasonable to suppose that these protections may be disregarded with no threshold showing whatever.

### III.

The en banc majority further states that if the omission of this one sentence [in 28 U.S.C. §§ 1867(f) and (d)] is thought to be so telling, so too must the legislature's failure to include anything in the DCJSA defining (or even mentioning) this new threshold showing requirement that our dissenting colleagues would impose solely by implication.

This passage compares apples with oranges and misapprehends the division's holding and the position of the dissenting judges. What the majority calls the "new threshold showing requirement" adopted by the division does not "impose a result" by implication at all. On the contrary, the division was *required* to establish a standard because the legislature did not prescribe one and, indeed, excluded from the DCJSA the language in the federal statute that resolved the issue for the United States District Courts. Rather, it is the majority that "imposes a result" by treating as inconsequential[12] the critical fact that the language which required that outcome in the FJSSA has been left out of the DCJSA.

Where, as in this case, the legislature has changed or omitted language in a prior statute, the most reasonable inference from this course of events is that the meaning of the new statute is different from the meaning of the previous one. That, as we have demonstrated, is the significance of the exclusion from the DCJSA of the key language in § 1867(f) and § 1867(d). Congressional silence as to whether or not a threshold showing must be made, on the other hand, does not give rise to a comparable inference, and it raises an entirely different kind of question. A legislature's failure to specify a particular standard is not, and cannot reasonably be construed as, a determination as to what standard applies. In other words, if Congress does not say, one way or the other, whether any threshold showing must be made, its silence does not support the conclusion that parties seeking to challenge the composition of the jury pool continue to have automatic and unqualified access to confidential jury selection rec-

---

11. See Part III, *infra*.

12. According to the court, "the dissent reads too much into the absence of a few words." Those "few words," however, are the ones (in two separate subsections of § 1867) that address and resolve the issue before us, and their "absence" (a word apparently used by the majority, in place of "omission," to imply that the change may not have been deliberate) therefore makes all the difference in the world.

ords, unavailable to anyone else, notwithstanding the omission of provisions from a prior statute that gave them such an unqualified right, but which are no longer in effect. Rather, where, as here, Congress has not explicitly addressed the subject, but has declined to retain the dispositive language contained in the predecessor statute, the court must heed all relevant indications of Congressional intent. The "change in meaning" canon is one of those indications, and in this case, an especially persuasive one.

For the reasons previously stated, the most reasonable construction of a statute from which the "shall be allowed inspect" language of § 1867(f) and the "shall be entitled to present" language of § 1867(d) have been eliminated is that the unqualified right previously granted only to criminal defendants and other litigants now no longer exists under the DCJSA. Further, as a common law court addressing a question not previously decided in this jurisdiction, we may appropriately look to the decisions of the courts of other jurisdictions which have been confronted with similar issues. *See, e.g., In re Estate of McKeever,* 361 A.2d 166, 171 (D.C.1976).

In this connection, the decision of the Supreme Court of California in *People v. Jackson,* 13 Cal.4th 1164, 56 Cal.Rptr.2d 49, 920 P.2d 1254 (1996), *cert. denied,* 520 U.S. 1216, 117 S.Ct. 1705, 137 L.Ed.2d 830 (1997), merits our careful consideration. Although not mentioned by the court in *Jackson,* California's Trial Jury Selection and Management Act reflects a policy substantially equivalent to that of the DCJSA. It provides that "all persons selected for jury service shall be selected at random from the population of the area served by

the court[,]" and that "all qualified persons have an equal opportunity ... to be considered for jury service[.]" CAL.CIV.PROC. CODE § 191. Like the DCJSA, however, the California statute contains no provision comparable to § 1867(f) and § 1867(d). In the absence of such provisions, the court held in *Jackson* that although the defendant need not establish a *prima facie* violation of the statute in order to obtain discovery of non-public jury selection materials, a threshold "reasonable belief" showing is required. *Id.* at 1268. The court reached this conclusion even though there was no prior California statute which contained language such as that in the FJSSA, so that the "change in meaning" canon on which the division relied in *Gause I,* and on which we rely in this dissenting opinion, did not come into play. Accordingly, the reasoning of the Supreme Court of California in *Jackson* applies to this case *a fortiori.*

The en banc majority gratuitously criticizes the "reasonable belief" standard adopted by California's highest court as "confusingly vague," [13] but cites no authority whatever in support of its criticism. The government, on the other hand, has invited our attention to a number of decisions from various jurisdictions in which the courts have taken an approach similar to that of the Supreme Court of California in *Jackson* (and of the division in *Gause I* ). *See, e.g., Rojas v. State,* 288 So.2d 234, 237 (Fla.1973); *State v. Avcollie,* 188 Conn. 626, 453 A.2d 418, 423 (1982); *cert. denied,* 461 U.S. 928, 103 S.Ct. 2088, 77 L.Ed.2d 299 (1983); *Pimentel v. State,* 710 S.W.2d 764, 777–78 (Tex.Ct.App.1986). In our view, these decisions constitute persuasive authority for the standard adopted by the

13. The majority does not, and indeed cannot, explain why a "reasonable suspicion" or "reasonable belief" standard is sufficiently definite to support a significant temporary deprivation of personal liberty, *see Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), but too vague to enable the trial court to resolve a request for discovery.

division in *Gause I*, and our en banc court should adopt that standard.

## IV.

For the foregoing reasons, we respectfully dissent.[14]

---

**14.** Part II. C of the majority opinion deals primarily with contingencies that may or may not arise in the future (*e.g.*, what juror-related facts may be relevant, when a protective order may be appropriate, whether attorneys' eyes only restrictions may be imposed), but which have not been raised by any party in this appeal. Indeed, the evidence in this case, and the facts relating to the selection of the jury that convicted the appellants, are conspicuous in their absence from the opinion of the court, which treats the issue before us as a somewhat abstract one, replete with advisory "guidance" for the Superior Court and counsel. In any event, we think it premature for a court, and especially for a sharply divided court, to ruminate in advance regarding issues that may or may not be presented in the future. *See, e.g., Allen v. United States*, 603 A.2d 1219, 1228–29 n. 20 (D.C.1992) (en banc); *District of Columbia v. Wical Ltd. P'ship*, 630 A.2d 174, 181–82 (D.C.1993); *Gause I*, 959 A.2d at 687 n. 16. We also think that the majority's foray into advisory guidance about the trial court's authority to order disclosure of jury records incrementally—*i.e.*, only as necessary—is really a retreat from the "unqualified right to all relevant jury records" standard that the majority insists on importing into the DCJSA.